# EXHIBIT 3

 Caution
As of: June 6, 2018 10:31 PM Z

## *Prater v. Commerce Equities Mgmt. Co.*

United States District Court for the Southern District of Texas, Houston Division

November 19, 2007, Decided; November 19, 2007, Filed

CIVIL ACTION NO. H-07-2349

**Reporter**
2007 U.S. Dist. LEXIS 85338 *; 2007 WL 4146714

JASMINE PRATER, et al., Plaintiffs, v. COMMERCE EQUITIES MANAGEMENT COMPANY, INC., et al., Defendants.

**Subsequent History:** Motion granted by, Costs and fees proceeding at, Motion denied by *Prater v. Commerce Equities Mgmt. Co., 2008 U.S. Dist. LEXIS 98795 (S.D. Tex., Dec. 8, 2008)*

## Core Terms

employees, similarly situated, notice, apartment, office employee, overtime, duties, leasing, salaried, exempt, leasing agent, plaintiffs', collection action, parties, requirements, putative class member, collective-action, classified, hourly, job duties, retaliated, staff, named plaintiff, certification, allegations, titles, aggrieved individual, plaintiff asserted, class member, defendants'

**Counsel: [*1]** For JASMINE PRATER, CHRISTINA STROYICK, ANGELICA MURILLO, Plaintiffs: Howard L Steele, Jr, LEAD ATTORNEY, Steele Sturm PLLC, Houston, TX.

For Commerce Equities Management Company, Inc., Commerce Equities, Inc., Commerce Equities - Settler's Ranch Ltd., Bayou on the Bend Holdings, Ltd., Mid Rise Builders, LLC, Matthew G. Dilick, Defendants: Mark Joseph Oberti, LEAD ATTORNEY, Seyfarth Shaw LLP, Houston, TX.

**Judges:** Lee H. Rosenthal, United States District Judge.

**Opinion by:** Lee H. Rosenthal

## Opinion

**MEMORANDUM AND OPINION**

Jasmine Prater, Christina Stroyick, and Angelica Murillo sued their former employers, Commerce Equities Management Company, Inc.; Commerce Equities Inc.; Commerce Equities -- Settler's Ranch Ltd.; Bayou on the Bend Holdings, Ltd.; Mid Rise Builders, LLC; and Matthew G. Dilick. The plaintiffs allege that the defendants violated the Fair Labor Standards Act ("FLSA"), *29 U.S.C. § 201 et seq.,* by failing to pay overtime for hours worked in excess of forty hours in a work week. The plaintiffs also allege retaliation in violation of the FLSA.

The plaintiffs seek to represent a class of similarly situated employees. They have moved this court for the issuance of notice to a conditionally certified class of **[*2]** employees who worked as apartment office employees--although their job titles included leasing agent, leasing manager, assistant property director, and marketing director--during the period from July 18, 2004 to the present. (Docket Entry No. 2). The defendants have responded, (Docket Entry No. 14); the plaintiffs have replied, (Docket Entry No. 19); and the defendants have surreplied, (Docket Entry No. 20). The defendants have also moved to strike portions of affidavits that the plaintiffs attached to their reply. (Docket Entry No. 21).

Based on the motions, the responses and replies, the submissions of the parties, and the applicable law, this court denies the defendants' motion to strike and authorizes the issuance of notice to two conditionally certified classes of defendants' apartment office employees. The reasons are set out in detail below.

**I. Background**

Matthew Dilick is the principal in whole or in part of the entities the plaintiffs sued. These entities own and operate several rental properties in Houston, Texas. The named plaintiffs seek to proceed on behalf of between fifteen to twenty office employees who worked

2007 U.S. Dist. LEXIS 85338, *2

at the defendants' apartment complexes.

The named plaintiffs **[*3]** are Jasmine Prater, Christina Stroyick, and Angelica Murillo. In 2002, Stroyick worked as a leasing agent for several months at Westlake Residential. She worked at Settler's Ranch during the summer of 2004 and at Bayou on the Bend at some time during 2005. She returned to work at Bayou on the Bend in August 2006 as a leasing agent. Prater began working at Bayou on the Bend in May 2005. Murillo began working at Bayou on the Bend as a receptionist in November 2006 and eventually became a leasing agent.

The parties dispute the nature of the plaintiffs' duties. The plaintiffs allege that they and other leasing office employees all worked as leasing agents or performed leasing agent duties, despite their different titles. They "gave tours to potential renters, prepared leases to be signed, collected rents, walked the property looking for any items that needed to be repaired, [attended to] tenant complaints and performed general administrative tasks." (Docket Entry No. 19, Ex. 1, Affidavit of Jasmine Prater, P 5). The plaintiffs contend that all apartment office employees, regardless of title, were directed by Dilick and required to follow his instructions and policies. The plaintiffs assert **[*4]** that Dilick made the decisions that required discretion and judgment and did not allow the employees to do so.

The plaintiffs allege that they regularly worked more than forty hours per week but did not receive overtime pay. The plaintiffs assert that they were not given paid vacation days and were docked for sick days. They allege that the defendants failed to keep accurate records and that as a result, the defendants issued paychecks for incorrect pay periods, failed to calculate all hours worked during a given pay period and did not pay overtime when it was due, and neglected to withhold social security and FICA taxes from the paychecks.

The defendants respond that the plaintiffs had different job titles and different job duties. The defendants assert that Stroyick was a marketing director "primarily responsible for developing and executing marketing plans to increase the number of leases at Bayou on the Bend apartments," and was paid on a salaried basis. (Docket Entry No. 14, Ex. 1 at P 8). The defendants assert that Prater, who was also salaried, was an assistant property director "primarily responsible for handling the leasing financial aspects of the company and was routinely **[*5]** required to exercise her

discretion and independent judgment with respect to matters of significant," such as the "purchasing of materials and supplies, apartment repairs, maintenance staffing issues, and oftentimes front-office staffing." (Docket Entry No. 14, Ex. 1 at P 10). In addition, the defendants argue that the salaried leasing office positions - leasing manager, assistant property director, property director, and marketing director - did not involve the same duties as the hourly leasing agent position and were properly classified as salaried positions.

The plaintiffs seek to bring a collective-action suit on behalf of situated employees working as apartment office workers at Dilick's apartment properties. They argue that they and other apartment office employees performed similar duties and regularly worked over forty hours a week, but did not receive overtime pay. The defendants argue that a collective-action suit is improper because the claims of the putative class members are sufficiently dissimilar that they will require a fact-specific, highly individualized inquiry and because the plaintiffs have failed to show that other similarly situated employees exist.

## II. The Applicable **[*6]** Legal Standards

*Section 207(a) of the FLSA* requires covered employers to compensate nonexempt employees at overtime rates for time worked in excess of statutorily defined maximum hours. *29 U.S.C. § 207(a)*. Section 216(b) creates a cause of action for employees against employers violating the overtime compensation requirements. *29 U.S.C. § 216(b)*. Section 216(b) provides:

> An action . . . may be maintained . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

*Id.* Section 216(b) establishes an opt-in scheme under which plaintiffs must affirmatively notify the court of their intention to become parties to the suit. *See Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1212 (5th Cir. 1995)*. District courts have discretion in deciding whether to order notice to potential plaintiffs. *See Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 170-171, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989)*; *Villatoro v. Kim Son Rest., L.P., 286 F. Supp. 2d 807, 808 (S.D. Tex. 2003)*.

2007 U.S. Dist. LEXIS 85338, *6

Courts recognize two **[*7]** methods to determine whether to authorize notice to similarly situated employees advising them of their right to join an FLSA collective action. These methods are the two-step *Lusardi* approach and the spurious class action *Shushan* approach. *See Shushan v. Univ. of Colo. at Boulder, 132 F.R.D. 263 (D. Colo. 1990); Lusardi v. Xerox Corp., 118 F.R.D. 351 (D.N.J. 1987)*. In *Mooney*, the Fifth Circuit found it unnecessary to determine which method is most appropriate. *54 F.3d at 1216*. Most courts use the "two-step *ad hoc* approach" as the preferred method for making the similarly-situated analysis, rather than the Rule 23 requirements. *See Basco v. Wal-Mart Stores Inc., 2004 U.S. Dist. LEXIS 12441, 2004 WL 1497709, at *4 (E.D. La. July 2, 2004); Grayson v. K Mart Corp., 79 F.3d 1086, 1096 n.12 (11th Cir. 1996)* (noting that "the requirements for pursuing a *§ 216(b)* class action are independent of, and unrelated to, the requirements for class action under *Rule 23*"); *Lachapelle v. Owens-Illinois, Inc., 513 F.2d 286, 288 (5th Cir. 1975)* (finding a fundamental difference between Rule 23 class actions and FLSA collective actions); *Mielke v. Laidlaw Transit, Inc., 313 F. Supp. 2d 759, 762 (N.D. Ill. 2004)* (stating that the majority **[*8]** of courts have employed or implicitly approved the two-step method); *Villatoro, 286 F. Supp. 2d at 810*.

"*Lusardi* and its progeny are remarkable in that they do not set out a definition of 'similarly situated,' but rather they define the requirement by virtue of the factors considered in the [two-step] analysis." *Mooney, 54 F.3d at 1213*. The first step of analysis is the "notice stage" in which the district court decides whether to issue notice to potential class members. *See id. at 1213-14*. The court's decision is often based only on the pleadings and affidavits that have been submitted. *Id.* "Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class" that provides potential class members with notice and the opportunity to opt-in. *Id. at 1214 n.8*. Even this lenient standard appears to require substantial allegations that potential members "were together the victims of a single decision, policy, or plan . . . ." *Id.* (citing *Sperling, 118 F.R.D. at 407*). A factual basis for the allegations is needed to satisfy this first step. *See Hall v. Burk, No. Civ. 301CV2487H, 2002 U.S. Dist. LEXIS 4163, 2002 WL 413901, at *3 (N.D. Tex. Mar. 11, 2002)* **[*9]** (stating that "[u]nsupported assertions of widespread violations are not sufficient to meet Plaintiff's burden"); *see also Haynes v. Singer Co., Inc., 696 F.2d 884, 887 (11th Cir. 1983)*. Some courts place an emphasis on finding "some identifiable facts or

legal nexus [that] bind the claims so that hearing the cases together promotes judicial efficiency." *Barron v. Henry County Sch. Sys., 242 F. Supp. 2d 1096, 1103 (M.D. Ala. 2003)* (citing *Sheffield v. Orius Corp., 211 F.R.D. 411, 416 (D. Or. 2002)*); see *Basco, 2004 U.S. Dist. LEXIS 12441, 2004 WL 1497709, at *5* (quoting *Heagney v. European Am. Bank, 122 F.R.D. 125, 127 (E.D.N.Y. 1988)* (stating that certification is appropriate when some factual nexus binds the named plaintiffs and potential class members as victims of a particular alleged policy or practice)). "A court may deny plaintiffs' right to proceed collectively if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice." *England v. New Century Fin. Corp., 370 F. Supp. 2d 504, 507 (M.D. La. 2005)*; *see Barron, 242 F. Supp. 2d at 1104* ("[T]he mere fact that violations occurred cannot be enough to establish similarity, as that would **[*10]** not ultimately be sufficient to establish a pattern and practice without a showing that the violations were more than sporadic occurrences."). If a court conditionally certifies a class, the action proceeds as a collective action during discovery. *See Mooney, 54 F.3d at 1214*.

The second stage typically occurs when discovery is largely complete and the defendant moves to "decertify" the conditionally certified class. *See id.; Lusardi, 118 F.R.D. at 359*. At that point, the court makes a factual determination as to whether there are similarly situated employees. *Id.* If the district court finds that the claimants are similarly situated, the collective action may proceed. *See Mooney, 54 F.3d at 1214; Basco, 2004 U.S. Dist. LEXIS 12441, 2004 WL 1497709, at *3*. If the court decertifies the class, the opt-in plaintiffs are dismissed without prejudice and the original plaintiffs proceed on their individual claims. *See id.; England, 370 F. Supp. 2d at 508*.

*Section 13(a)(1) of FLSA* exempts employees occupying "bona fide executive, administrative, or professional" positions from the overtime requirements of *section 7*. *29 U.S.C. § 213(a)(1)*. "The exempt or nonexempt status of any particular employee must be determined on the **[*11]** basis of whether the employee's salary and duties meet the requirements of the regulations in this part." *Id.* The Code of Federal Regulations provide a "short test" to classify employees for the executive or administrative exemptions. An employee can be classified as an exempt executive if: (1) the employee is paid a salary of not less than $ 455 per week; (2) the employee's primary duty is the management of the enterprise or a subdivision; (3) the

2007 U.S. Dist. LEXIS 85338, *11

employee customarily and regularly directs the work of two or more employees; and (4) the employee has the authority to hire or fire other employees, or the authority to recommend such actions. *29 C.F.R. § 541.1(a)*. An employee can be classified as an exempt administrative employee if: (1) the employee is paid a salary of not less than $ 455 per week; (2) the employee's primary duty is the performance of office or nonmanual work directly related to the management or general business of the employer; and (3) the employee's primary duty includes the exercise of discretion and independent judgment with respect to matters of significance. *29 C.F.R. § 541.2*.

Although the plaintiffs have moved for notice and not conditional certification, notice **[\*12]** does not issue unless a putative collective action is approved by the court. *See, e.g., Jones v. Casey's General Stores, 517 F. Supp. 2d 1080, 2007 U.S. Dist. LEXIS 73402, 2007 WL 2823682, at \*4 (S.D. Iowa 2007)* ("Formal notice to putative collective members in an FLSA action is provided after conditional certification has been approved by the court."); *Dominquez ex rel. v. Minn. Beef Indus., No. CIV.06-1002RHKAJB, 2007 U.S. Dist. LEXIS 61298, 2007 WL 2422837, at \*2 (D. Minn. August 21, 2007)* ("If the district court 'conditionally certifies' the class, putative class members are given notice and the opportunity to "opt-in.'") (*quoting Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1218 (11th Cir. 2001)*).

### III. Analysis

This case is at the "notice stage" of the *Lusardi* analysis. Because the parties have presented minimal evidence, in the form of affidavits, the decision whether to issue notice to potential class members is "made using a fairly lenient standard." *Mooney, 54 F.3d at 1213*. At this stage, a plaintiff must make a minimal showing that (1) there is a reasonable basis for crediting the assertions that aggrieved individuals exist, (2) that those aggrieved individuals are similarly situated to the plaintiff in relevant **[\*13]** respects given the claims and defenses asserted, and (3) that those individuals want to opt in to the lawsuit. *See, e.g., Haynes, 696 F.2d at 887*; *H&R Block, 186 F.R.D. at 400*; *Dybach, 942 F.2d at 1567-68*; *D'Anna, 903 F.Supp. at 894*; *Harper v. Lovett's Buffet, Inc., 185 F.R.D. 358 (M.D. Ala. 1999)*. As noted, most courts require some factual support for the complaint allegations of classwide discrimination to authorize notice. *See, e.g., Severtson v. Phillips Beverage Co., 137 F.R.D. 264, 266 (D. Minn. 1991)* (allegations of plaintiff alone insufficient); *Felix de Asencio v. Tyson*

*Foods Co., 130 F. Supp. 2d 660, 663 (E.D. Pa. 2001)* (pleadings and four declarations from putative class members sufficient). The parties dispute all three elements of the first-stage analysis.

Under the first factor, the defendants argue in their response that the plaintiffs have not shown that there is a reasonable basis for crediting the assertions that similarly situated, aggrieved individuals exist. They also argue that the plaintiffs have failed to allege a cause of action supported by the FLSA. These arguments are not persuasive. The plaintiffs allege that the defendants failed to pay overtime for hours **[\*14]** worked in excess of forty in a given week. (Docket Entry No. 1 at 5-7). This is a cognizable claim under the FLSA. The named plaintiffs state in their affidavits that despite the differences in titles, the apartment office employees were all directed by one person--Dilick--and "were all treated the same" and "were pretty much on the same level." (Docket Entry No. 1, Ex. 4, Affidavit of Jasmine Prater, P 10). Each named plaintiff also submitted an affidavit stating that she had personal knowledge of "other apartment office employees similarly situated that have either been retaliated against by Dilick and/or have not properly received overtime." [1] (Docket Entry No. 19,

_____

[1] The defendants move to strike these statements from the plaintiffs' affidavits on the grounds that they are speculative, lack foundational support, and are vague. (Docket Entry No. 21 at 2). The defendants argue that no plaintiff offers any "foundation to establish how she allegedly knows that other people did not receive overtime" and that the statements are therefore "pure speculation." (*Id.* at 2). The plaintiffs' affidavits lay the proper foundation for at least some of the named individuals, who are referenced elsewhere in the affidavits in discussions of the plaintiffs' duties. The plaintiffs have shown that they have sufficient personal knowledge of at least several similarly situated employees.

The defendants also argue that the plaintiffs' affidavits are vague because they state that they know that other employees "have either been retaliated against *and/or* did not properly received overtime." (Docket Entry No. 19, Ex. 1, Affidavit of Christina Stroyick, P 10) (emphasis added). The defendants contend that "the phrase 'and/or' is vague and does not reasonably give any notice regarding which employees **[\*16]** were allegedly retaliated against and which employee allegedly did not receive proper overtime." (Docket Entry No. 21 at 2). The purpose of the plaintiffs' affidavits at this stage in the Lusardi analysis is not to give notice to the defendants as to the identities of putative class members. The purpose of the affidavits is to make a factual showing that there are similarly situated employees to warrant issuing notice of a collective action suit. The defendants' motion to

Ex. 1, Affidavit of Jasmine Prater, P 7; Affidavit of Christina Stroyick, P 10; Affidavit of Angelica Murillo, P 9). In addition, Christine Stroyick stated in her affidavit that she was present during and overheard a speakerphone conversation in which Dilick threatened another leasing office employee that he would raise her rent for on-site housing if she did not agree to work over 40 hours per week. (Docket Entry No. 1, Ex. 4, Affidavit of Christina Stroyick, P 18). The plaintiffs have shown that it is reasonable to **[*15]** believe that there are other aggrieved apartment office employees.

The parties further dispute whether these aggrieved individuals are similarly situated to warrant issuing notice of a collective action. The defendants contend that the plaintiffs improperly seek to include employees with different job duties, different job titles, different compensation (hourly or salaried), and different FLSA exemption status. They argue that misclassification cases involving employees with different job duties "are particularly unsuitable for collective action treatment." (Docket Entry No. 14 at 3).

The putative class members in a FLSA collective-action suit must be similarly situated in terms of job requirements and similarly situated in terms of payment. *Ryan v. Staff Care, Inc., 497 F.Supp.2d 820, 825 (N.D. Tex. 2007)* **[*17]** (citing *Dybach v. State of Fla. Dept. of Corrections, 942 F.2d 1562, 1567-68 (11th Cir. 1991)*). A plaintiff need only demonstrate a reasonable basis for the allegation that a class of similarly situated persons exist. *Lima v. Int'l Catastrophe Solutions, Inc., 493 F. Supp. 2d 793, 798 (E.D. La. 2007)*.

In this case, the parties have submitted conflicting affidavits about the plaintiffs' duties, how they were paid, and the work generally performed in the leasing offices of the defendants' properties. The plaintiffs assert that all the apartment office employees basically performed the same duties, were entitled to receive overtime payment, but were not paid overtime. The defendants contend that the employees had varying job duties and that the salaried employees--leasing managers, assistant property directors, property directors, and the marketing director--are properly classified as exempt employees and that only the leasing agents are paid hourly.

The plaintiffs have made the necessary minimal showing that they and other leasing staff employees are similarly situated in terms of job requirements. Although

_____

strike is denied.

Dilick's affidavit states that the plaintiffs had different positions and different **[*18]** duties, the plaintiffs assert in their affidavits that they all performed the duties of a leasing agent and "all did the same thing which included performing leasing, administrative, and marketing tasks." (Docket Entry No. 19, Ex. 1, Affidavit of Jasmine Prater, P 5). The plaintiffs stated:

> Leasing staff [working for the defendants] consists of leasing agents, administrative personnel and management. Leasing staff and administrative personnel, as well as management, were all treated the same. No matter what your title is, you could be asked to do almost anything, and were pretty much on the same level. If you were in the room at the time and something needed to be done, you had to do it regardless of whose job it was. There were not really any lines of distinction between positions.

(Docket Entry No. 1, Ex. 4, Affidavit of Jasmine Prater, P10; Affidavit of Christina Stroyick, P11). The plaintiffs state in their affidavits that they all worked under Dilick's direction and policies.

The defendants argue that because the putative class members' duties varied from day to day, they are not similarly situated for purposes of a collective action. *See Aguirre v. SBC Communs., Inc., No. H-05-3198, 2007 U.S. Dist. LEXIS 17259, 2007 WL 772756, at *12* **[*19]** *(S.D. Tex. 2007 March 12, 2007)* ("[E]mployees . . . are not 'similarly situated' for the purposes of an 'opt-in' FLSA class if their day-to-day job duties vary substantially.") (citing *Morisky v. Pub. Serv. Electric & Gas Co., 111 F.Supp.2d 493, 498 (D.N.J. 2000)*); *see also Holt v. Rite Aid Corp., 333 F. Supp. 2d 1265, 1270-72 (M.D. Ala. 2004)*; *Morisky, 111 F. Supp. 2d at 498*. The defendants have failed to show that these variations are material. Although some of the apartment office staff duties may have varied day-to-day, the evidence suggests that the focus of the leasing staff duties was to show the property to potential renters, manage renter requests and rents, and perform general administrative tasks. Some day-to-day variation in how and when the staff performed these tasks does not preclude conditional certification and the issuance of notice. *See Foraker v. Highpoint Southwest, Servs., L.P., No. H-06-1856, 2006 U.S. Dist. LEXIS 63951, 2006 WL 2585047, at *4 (S.D. Tex. Sept. 7, 2006)* ("While undoubtedly the [plaintiffs'] duties vary to some degree from day-to-day and possibly from location to location . . . [t]he fact that on different days customers may have questions for a [plaintiff employee] does not **[*20]** change the thrust of the job duties described . . . ."); *see also Holbrook v. Smith & Hawken, Ltd., 246 F.R.D. 103, 2007 U.S. Dist. LEXIS 75549, 2007 WL*

2007 U.S. Dist. LEXIS 85338, *20

2982239, at *4 (D.Conn. Oct. 11, 2007) ("The court need not find uniformity in each and every aspect of employment to determine a class of employees are similarly situated."); *Berger v. Cleveland Clinic Found., No. 1:05 CV 1508, 2007 U.S. Dist. LEXIS 76593, 2007 WL 2902907, at * 20 (N.D. Ohio Sept. 29, 2007)* ("[S]imilarly situated does not mean identically situated.") (quoting *Wilks v. Pep Boys, No. 3:02-0837, 2006 U.S. Dist. LEXIS 69539, 2006 WL 2821700, at *3 (M.D. Tenn. Sept. 26, 2006)*).

Moreover, the plaintiffs allege and present affidavits stating that they and the other apartment office employees worked under the control and direction of a single person, Dilick. *See, e.g., Berger, 2007 U.S. Dist. LEXIS 76593, 2007 WL 2902907, at * 21* ("[The court finds the fact that many of the [putative class members] are respiratory therapists while Plaintiff is a respiratory technician does not, by itself, preclude a finding that the class members are similarly situated, as all members of each position worked in the same department within the same building, had the same supervisor, and their job duties overlapped significantly."); *Asencio, 130 F.Supp.2d at 663*(finding **[*21]** collective-action treatment proper in case where the putative class members worked at the same facility).

The record shows that the defendants treated the leasing agents as hourly and the leasing managers, assistant property directors, property directors, and the marketing director as exempt salaried employees. The defendants assert that Prater, Stroyick, and other salaried employees were exempt from the FLSA, while Murillo and other leasing agents were not. The plaintiffs dispute these assertions and contend that despite the titles, all performed the same duties and that the salaried employees were misclassified as either exempt or as independent contractors. The plaintiffs allege that apartment office employees were entitled to overtime pay but were denied it and that the defendants failed to keep proper employee records and to withhold social security or FICA taxes. The record supports certification of a class of hourly employees and a class of allegedly misclassified salaried employees. Under the lenient *Lusardi* standard, the plaintiffs have made the necessary minimal showing that there are two classes of apartment office employees who are similarly situated to each other in terms **[*22]** of position and payment.

The defendants argue that the hourly employees' claims require individual treatment of each putative class member's hours worked, *see Basco, 2004 U.S. Dist. LEXIS 12441, 2004 WL 1497709, at *4*, and that the

misclassification claims will require a fact-intensive analysis of each putative class member's duties. *See Mike v. Safeco Ins. Co. of Am., 274 F. Supp. 2d 216, 220 (D.Conn. 2003)*. In response, the plaintiffs contend that all the apartment office employees, regardless of title or exempt status, performed basically the same duties and were treated the same way. The current record does not show that the claims of those classified as hourly employees require such an individualized analysis of each employee's schedule and duties as to preclude collective-action treatment. Nor does the record show that collective-action treatment is improper for the claims of those classified as exempt. Collective-action treatment is proper for misclassification claims when the employees have essentially the same basic job responsibilities. *See Holbrook, 2007 U.S. Dist. LEXIS 75549, 2007 WL 2982239, at *4* ("[The plaintiff] contends that all [Assistant Store Managers] maintained the same basic job responsibilities and were all classified **[*23]** as exempt . . . but that ASMs basic job responsibilities could not have qualified them as exempt executives under the statute. Such commonality in position, classification, and treatment . . . constitutes a common scheme or plan that renders all ASMs similarly situated for FLSA purposes.").

Lastly, the parties dispute whether the plaintiffs have shown that other aggrieved individuals want to opt in. The plaintiffs allege that the defendants have retaliated against them and against current apartment office employees or have otherwise attempted to discourage them from participating in the lawsuit. Prater states in her affidavit that after she retained counsel, she sent a letter to Dilick asking that she be paid for overtime under the FLSA. After receiving the letter, Dilick sued Prater in small claims court and eventually offered to settle the suit if she released her FLSA claims. (Docket Entry No. 19, Ex. 1, Affidavit of Jasmine Prater, P 3-4). Stroyick states in her affidavit that Dilick threatened her uncle, who owns 11% of one of the defendant corporate entities, that if she proceeded with the case and other plaintiffs opted in, Dilick would hold her uncle "responsible for paying **[*24]** a judgment or settlement against the Defendants." (Docket Entry No. 19, Ex. 1, Affidavit of Christina Stroyick, P 3). Stroyick also asserts that after Prater had retained counsel and sent a letter to Dilick demanding payment for her overtime, both Dilick and Gordon Olhausen, a CPA for the defendants, contacted Stroyick to find out if she was involved with Prater's demand and expressed concern that the suit would harm her reputation "as a future lawyer," (*id.,* Affidavit of Christina Stroyick, P 5), as well as her uncle, (*id.,* Affidavit of Christina Stroyick, P 6). Murillo similarly

states in her affidavit that after Prater had demanded payment for her overtime, two employees of the defendants approached her and told her that "joining in this suit would go on [her] permanent, public record, and [she] would not be able to get a job," (*id.,* Affidavit of Angelica Murillo, P 3), and that "people would not want to hire" her if she participated in the suit, (*id.,* Affidavit of Angelica Murillo, P 3). All three plaintiffs assert in their affidavits that they know of other leasing office employees who have experienced retaliation. The defendants do not respond directly to these allegations but **[*25]** argue that the plaintiffs have failed to show "that even one putative class member is interested in joining their lawsuit." (Docket Entry No. 20 at 5).

Although the plaintiffs present no affidavits from other apartment office employees expressing an interest in opting in, this is not fatal to the issuance of notice. *See Lima, 493 F. Supp. 2d at 799-800 (E.D. La. 2007)* (noting that while the plaintiffs did not provide any affidavits of similarly situated employees wishing to opt in, "[i]t seems appropriate to certify the collective action at this time and revisit the question later after some discovery"). Their allegations of retaliation and intimidation are relevant to the analysis of this third factor. This suit potentially involves up to twenty plaintiffs. The affidavits of Stroyick and Murillo show that there is at least some interest on the part of other apartment office employees in participating in the suit. *See Simmons v. T-Mobile USA, Inc., No. H-06-1820, 2007 U.S. Dist. LEXIS 5002, 2007 WL 210008 *9 (S.D.Tex. Jan.24, 2007)* (emphasis added). Although Prater, Stroyick, and Murillo are currently named plaintiffs, Prater alone initiated legal action against the defendants. Stroyick and Murillo subsequently **[*26]** decided to join her and they filed the complaint in this case together. Given the present record, the plaintiffs have made the necessary showing "that at least a few similarly situated individuals seek to join the lawsuit." *Simmons, 2007 U.S. Dist. LEXIS 5002, 2007 WL 210008, at *9.*

Under the lenient *Lusardi* standard, the plaintiffs have shown that notice of a collective-action suit is warranted. The plaintiffs' motion for notice is granted for two subclasses of employees: leasing agents who were paid on an hourly basis; and other apartment office employees paid on a salary basis, including leasing managers, assistant property directors, property directors, and marketing director. If sufficient evidence is not developed during discovery to show that the apartment office employees in either subclass are similarly situated, the defendants may ask this court to decertify.

### III. Conclusion

The plaintiffs' motion for notice is granted. Their motion for expedited discovery is granted. The defendants did not comment on the form of notice the plaintiffs proposed; any comments must be filed by December 7, 2007.

The parties have consented to mediate and have agreed on a mediator. The parties must mediate by January 15, 2008.

SIGNED **[*27]** on November 19, 2007, at Houston, Texas.

/s/ Lee H. Rosenthal

Lee H. Rosenthal

United States District Judge

---