# EXHIBIT 7

✚ Positive
As of: June 6, 2018 10:35 PM Z

## *Vargas v. Richardson Trident Co.*

United States District Court for the Southern District of Texas, Houston Division

February 22, 2010, Decided; February 22, 2010, Filed

CIVIL ACTION H-09-1674

**Reporter**

2010 U.S. Dist. LEXIS 15104 *; 2010 WL 730155

RICARDO VARGAS and JUAN PABLO GARCIA, on Behalf of Themselves and on Behalf of All Others Similarly Situated, Plaintiffs, VS. THE RICHARDSON TRIDENT COMPANY, THE RICHARDSON TRIDENT COMPANY d/b/a THE TRIDENT COMPANY, TRIDENT METALS, INC. d/b/a THE TRIDENT COMPANY, and THE TRIDENT COMPANY, Defendants.

## Core Terms

employees, notice, warehouse, similarly situated, Plaintiffs', overtime, declaration, hourly, manual, independent contractor, collection action, opt-in, discovery, laborers, facilities, hired, forty hour, requirements, certification, locations, payroll, hourly rate, Metals, steel, potential class members, statute of limitations, named plaintiff, class member, Interrogatory, demonstrates

**Counsel:** **[\*1]** For Ricardo Vargas, Juan Pablo Garcia, Plaintiffs: Galvin B Kennedy, Kennedy Hodges PLLC, Houston, TX.

For The Richardson Trident Company, doing business as The Trident Company, Trident Metals, Inc, doing business as The Trident Company, The Trident Company, Defendants: Jay M Wallace, LEAD ATTORNEY, Michael L Baum, Gibson McClure et al, Dallas, TX; Bryan Douglas Perkins, Gibson McClure Wallace Daniels LLP, Dallas, TX.

**Judges:** MELINDA HARMON, UNITED STATES DISTRICT JUDGE.

**Opinion by:** MELINDA HARMON

## Opinion

### OPINION AND ORDER

Pending before the Court in the above referenced cause, a putative collective action under *29 U.S.C. § 216(b)* of the Fair Labor Standards Act ("FLSA") [1] to recover overtime compensation allegedly owed to Plaintiffs Ricardo Vargas and Juan Pablo Garcia, individually and on behalf of all other similarly situated employees, current and former, of Defendants, at one and a half times their regular rate of pay, under *29 U.S.C. § 207(a)*, [2] are Plaintiffs' (1) opposed motion for class notice (instrument # 13) [3] and (2) unanswered motion for emergency ruling on # 13 (# 28). By addressing the first, the Court renders the latter moot.

### Plaintiffs' Motion for Class Notice

Plaintiffs allege that Defendants The Richardson Trident Company, The Richardson Trident Company d/b/a The Trident Company, Trident Metals, Inc. d/b/a The Trident

_____

[1] **Section 216(b)** provides in relevant part,

> Any employer who violates the provisions **[\*2]** of . . . *section 207* of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional amount as liquidated damages. . . . An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed with the court in which such action is brought. The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant and costs of the action. . . .

Case 4:17-cv-03762    Document 15-8    Filed on 06/08/18 in TXSD    Page 3 of 11

Page 2 of 10
2010 U.S. Dist. LEXIS 15104, *2

Company, and The Trident Company [4] operate a metal distributorship located throughout the continental United States and sell various metals, including aluminum, copper, brass, bronze, and stainless steel, which they customize into different lengths, sizes and shapes for their customers. Defendants employ manual laborers to perform molding, forging, cutting, and other general labor involved in metalwork.

Plaintiffs claim that they and other former, non-exempt, [5] hourly-paid, manual laborers employed by [*5] Defendants [6] were required to, and did frequently, work more than forty hours per workweek, but that they were only paid straight time for hours in excess of forty. [7] Under _29 U.S.C. § 207(a)_, non-exempt employees must be compensated for overtime work at not less than one and one-half times their regular rate for hours worked in excess of forty hours per week. Plaintiffs submit Ex. 6, Trident's Answers to Requests for Admissions Nos. 2 and 4, to demonstrate that Trident clearly admits the employees were non-exempt from overtime pay.

Emphasizing that this is a collective action under _29 U.S.C. § 216(b)_, [8] and not a class action under _Fed. R. Civ. P. 23_, [9] Plaintiffs argue that the class should extend

---

[2] _Section 207(a)(1)_ states,

> (a) Employees engaged in interstate commerce; additional applicability to employees pursuant to subsequent amendatory provisions

> (1) Except as otherwise provided in this section, no employer shall employ any of his employees [*3] who in any workweek is engaged in commerce or in production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

_29 C.F.R. § 778.110(a)_ states in relevant part,

> Earnings at hourly rate exclusively. If the employee is employed solely on the basis of a single hourly rate, the hourly rate is his "regular rate." For his overtime work he must be paid, in addition to the straight time hourly earnings, a sum determined by multiplying one-half the hourly rate by the number of hours worked in excess of 40 in the week. Thus a $ 6 hourly rate will bring, for an employee who works 46 hours, a total weekly wage of $

to all thirteen of Defendants' facilities and the Altair divisions. (Defendants maintain that the overtime violations occurred only at their Houston work site.) Plaintiffs' motion seeks to notify current and former employees of their right to recover unpaid overtime by

---

> 294 (46 hours at $ 6 plus 6 at $ 3). In other words, the employee is entitled to be paid an amount equal to $ 6 an hour for 40 hours and $ 9 an hour for the six hours of overtime, or a total of $ 294.

_See, e.g._, _Conner v. Celanese, Ltd., 428 F. Supp. 2d 628, 636 (S.D. Tex. 2006)_.

The purpose of permitting [*4] this kind of action is "to serve the interest of judicial economy and to aid in the vindication of plaintiffs' rights." _Basco v. Wal-Mart, No. Civ. A. 00-3184, 2004 U.S. Dist. LEXIS 12441, 2004 WL 1497709, *3 (E.D. La. July 2, 2004)_.

[3] Judge Stacy has granted in part (# 27) Plaintiffs' requests for discovery which are included in this motion and in their motion to compel (# 22).

[4] Defendants state that Plaintiffs incorrectly identified Trident Metals d/b/a The Trident Company as Trident Metals, Inc. d/b/a The Trident Company.

[5] Section 13(a)(1) of FLSA exempts employees occupying "bona fide executive, administrative, or professional" positions from overtime requirements. _29 U.S.C. § 213(a)(1)_.

[6] The amended original complaint (instrument # 11) at P 8 states, "The Class Members include all employees of Defendants['] assumed business name, 'The Altair Company,' which operates under the division names Altair Electronics and Altair Plastics." _See_ # 13, Ex. 7, Defendants' Answers to Plaintiffs' First Set of Interrogatories No.15, which Plaintiffs argue demonstrates that Trident does business under the assumed "Altair Electronics," "The Altair Company," and "Altair Plastics."

[7] As supporting [*6] evidence that Defendants simply paid employees regular pay for overtime hours, Plaintiffs attach Exhibits 1-A, 2-A, 3-A, and 4-A, payroll documents for Juan Pablo Garcia, Fidel Garcia, Benjamin Garcia, and Richard Vargas, respectively, as well as sworn declarations from each (Exs. 1-4).

[8] **Section 216(b)** requires that employees must "opt-in" to this lawsuit by filling out consent forms and filing them with the court.

[9] Rule 23 class actions follows an "opt out" procedure rather than an "opt in." _Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1212 (5th Cir. 1995), overruled on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003), as stated in Rachid v. Jack In The Box, Inc., 376_

joining this lawsuit. They request that notice be sent to all hourly paid manual laborers, regardless of their classification as employee or independent contractor, who worked more than forty hours in a work week at any time from May 1, 2006 until the present, i.e., the proposed class. Insisting they have met their burden to demonstrate a reasonable basis for a collective action, they submit supporting evidence to show "that Trident's company-wide policy compelled employees **[*7]** to work overtime and that Trident refused to compensate those overtime hours worked at the required rate of one and one-half times their regular rate. The evidence demonstrates that these employees are similarly situated *and* subject to a uniform payroll policy." # 13 at 12.

They **[*8]** urge the Court to expedite the notice to potential class members to prevent wasting of claims because the employees' claims are governed by a two-year statute of limitations or, in the case of a "willful" violation, a three-year statute of limitations, which is generally not tolled for any individual class member until that individual has filed with the Court his written consent to join the lawsuit. *29 U.S.C. § 256(a)*.

Thus Plaintiffs ask the Court to conditionally certify this action as a collective action and to authorize the proposed notice and consent form (# 13, Exhibits 9 and 10) to be sent to all manual laborers who worked for The Richardson Trident Company and The Altair Company, which operates under the division names "Altair Electronics" and "Altair Plastics," who were paid hourly, and who worked more than 40 hours per week at any time during the period from May 1, 2006 through the present.

**Defendants' Response**

In response (# 17), Defendants (collectively, "Trident") contend that Plaintiffs have not shown that there are any Trident employees working for any Trident company or division in any Trident facility [10] other than those in the

warehouse area of their Houston facility **[*9]** that are similar to them, subject to a common scheme or plan, and who wish to opt into this action. Trident insists that the Houston warehouse facility was the only one of all its facilities that hired and paid hourly labor on an independent contract basis to work in warehouse positions. Moreover Plaintiffs fail to meet their burden of showing that they are similarly situated to other Trident hourly-paid, manual laborers. [11]

Trident also claims that the proposed opt-in class is improper for five overlapping reasons supporting denial of Plaintiff's motion: (1) Plaintiffs were hired as independent contractors pursuant to the discretion and latitude given management at each of Trident's warehouse facilities in the structure and management of its workforce, including hiring practices; (2) Plaintiffs were employed only in one job position--as warehouse workers handling metal materials at Trident's Houston facility; (3) Only Trident's Houston facility practiced **[*11]** hiring and paying hourly labor on an independent contract basis to work in warehouse positions; (4) Plaintiffs are not similarly situated to employees in any other job position or to any in other Trident facilities; and (5) any group of individuals similarly situated to Plaintiffs is limited to warehouse workers working within Trident's Houston facility during the three-year period preceding a

_____

[10] Trident, supported by the Declaration of Robert Freytag, Chief Financial Officer of Trident, # 17, Ex. A, explains that The Richardson Trident Company (collectively, "Trident") operates under the assumed names of the "Trident Company" and the "Altair Company", and that Altair Electronics and Altair Plastics are divisions of The Richardson Trident Company d/b/a The Altair Company. Furthermore in the past three years Trident conducted its operations from, at most, thirteen different warehouse facilities in various locations: Richardson, Texas; Houston, Texas; Tulsa Oklahoma; Orange, California; Mansfield, Massachusetts; Thomasville, Georgia; Katy, Texas; Harlingen, Texas; Austin, Texas; El Paso, Texas; Odessa, Texas; Olathe, Kansas; and Altair in Richardson, Texas. **[*10]** In the past three years Trident states that it has closed the warehouses in Harlingen, Austin, El Paso, and Olathe.

[11] Trident maintains that the evidence shows Plaintiffs are not similarly situated to any workers in any of Trident's other warehouse facilities. The named individuals were all hired as temporary employees at the Houston facility on an independent contractor basis and were paid as independent contractors during the time they performed any labor for Trident. Freytag Decl., P 5. Trident's Houston warehouse is the only Trident warehouse to employ the practice of hiring hourly labor to work in warehouse positions as independent contractors. *Id.* at P 6.

_____

*F.3d 305, 311 n.10 (5th Cir. 2004)*. In the opt-in procedure under FLSA, "no person can become a party plaintiff and no person will be bound by or may benefit from the judgment unless he has affirmatively 'opted into' the class; that is, given his written, filed, consent." *La Chapelle v. Owens-Illinois, Inc., 513 F.2d 286, 287 (5th Cir. 1975)*. Moreover, the requirements of *Rule 23* do not apply to a P 216(b) class action, so there is no requirement of numerosity. *Watson v. Travis Software Corp., Civ. A. No. H-07-4104, 2008 U.S. Dist. LEXIS 94824, 2008 WL 5068806, *7-8 (S.D. Tex. Nov. 21, 2008)*.

2010 U.S. Dist. LEXIS 15104, *10

ruling on Plaintiffs' motion.

Trident maintains that workers were hired as employees or as independent contractors under the discretion and latitude given to management at each of Trident's warehouse facilities. Robert Freytag's Declaration supports Trident's claim that each warehouse had its own General Manager and Warehouse Manager, who managed and supervised their employees independently of managers in the other facilities. Each manger had discretion and latitude in the structure and management of its workforce, including hiring, so each could decide whether to hire warehouse workers as independent contractors or as employees.

The Houston facility did hire hourly labor to work in warehouse positions as independent contractors, including those who have submitted consent forms: Eulogio De Jesus, [*12] Benjamin Garcia, David Garcia, Fidel Garcia, Juan Pablo Garcia, Jose Refugio Martinez, Juan Carlos Roque, and Ricardo Vargas. In a practice unique to the Houston facility, these men were originally hired as temporary, hourly employees to work in the Houston warehouse as independent contractors and continued to be paid as independent contractors for as long as they worked for Trident. Moreover, their job duties were primarily handling metal materials at the Houston facility. Trident insists that the Altair divisions do not employ material handlers with the same or similar job functions as those of these nine men employed in Houston.

Although at the notice stage, the first of the two-stage certification process under *Lusardi v. Xerox Corp., 118 F.R.D. 351 (D.N.J. 1987)*, and progeny, the standard for Plaintiffs for conditional class certification is a "lenient" one, this Court previously determined that in demonstrating that potential members are "similarly situated," the standard "appears to require substantial allegations that potential members 'were together the victims of a single decision, policy, or plan . . . .'" *Aguirre v. SBC Communications, Inc., 2006 U.S. Dist. LEXIS 22211, 2006 WL 964554, *5 (S.D. Tex. Apr. 11, 2006)*, [*13] citing *Mooney v. Aramco Services Co., 54 F.3d 1207, 1213-14 (5th Cir. 1995)*(upholding the two-stage *Lusardi* analysis). Plaintiffs must also show, by means of affidavits and other evidence, that there are other employees, similarly situated with respect to their job requirements and their pay provisions, who want to opt-in. *See, e.g., Dybach v. State of Fla. Dep't of Corrections, 942 F.2d 1562, 1567-68 (11th Cir. 1991)*; *Grayson v. K Mart Corp., 79 F.3d 1086, 1096 (11th Cir. 1996)*, cert. denied sub nom. Helton v. Kmart, 519 U.S.

982, 117 S. Ct. 435, 136 L. Ed. 2d 332 and 519 U.S. 987, 117 S. Ct. 447, 136 L. Ed. 2d 342 (1996); *Bonilla v. Las Vegas Cigar Co., 61 F. Supp. 2d 1129, 1139 n.6 (D.C. Nev. 1999)*. Trident maintains that Plaintiffs have failed to make a showing, by affidavit or other evidence, of a factual nexus between their work situation in Trident's Houston warehouse as "steel workers" and the situation of current and former employees in any other Trident facility operated by any of the different entities that they have sued. The declarations they submit from named Plaintiffs Juan Pablo Garcia and Ricardo Vargas and from two opt-in Plaintiffs, Fidel Garcia and Benjamin Garcia, except for dates of employment, aver to the same matters: that they were employed [*14] as steel workers and in that job performed various duties involved in steel work; that they were paid an hourly rate; that they punched a time clock when they started and stopped working; that they regularly worked in excess of 40 hours in a workweek; that they typically worked more than 50 hours in a workweek; but that they were not paid one and one-half times their regular pay for the overtime. Each declarant identified other workers, including Refugio Martinez, German Garcia, Juan Carlos, David Garcia, and Eulogio de Jesus, whom they worked with and who have already submitted an opt-in consent form. [12] They also name Antonio Pacheco and/or Antonio Saldana as co-worker(s), who have stated they want to join but have not yet done so. They identify four other co-workers who, they claim, were paid in the same manner as declarants. All these people worked in the same position, performed the same job duties, worked the same hours, under the same time-keeping procedures, and under the same policies as the name Plaintiffs, the opt-ins, and five or six other declarants, but they fail to identify where they worked. The only evidence before the Court, Freytag's Declaration at P 5, indicates [*15] that they all worked in the Houston warehouse facility.

Furthermore Trident urges, Plaintiffs' evidence does not establish that there are similarly situated steel workers like them in any other Trident warehouse facility who performed the same or similar duties and who were "together the victims of a single decision, policy, or plan." *Mooney, 54 F.3d at 1214 n.8*. There is only a narrow group of similarly situated workers that named Plaintiffs are qualified to represent even though they have asked the court to certify a class of all Trident's

---

[12] On November 24, 2009, Plaintiffs filed an additional consent form signed by Eusebio Pablo Hernandez (# 21).

2010 U.S. Dist. LEXIS 15104, *15

manual laborers, regardless of whether they were classified as employees or independent contractors who were paid hourly and who worked more that forty hours in a weeks one time between May 1, 2006 and the present.

In support of their arguments, Defendants cite *Dorsey v. J&V Communication Services, Inc.*, Civ. A. No. H-04-0496, 2004 WL 5621864 (S.D. Tex. May 19, 2004)(denying conditional certification because proposed class would have included employees who held different types of jobs in different cities and plaintiff failed to provide substantial **[*16]** allegations demonstrating that they were similarly situated); *Blake v. Colonial Savings, F.A., No. Civ. A. H-04-0944, 2004 U.S. Dist. LEXIS 29122, 2004 WL 1925535 (S.D. Tex. Aug. 16, 2004)*(approving notice to loan officers in Colonial's Dallas office and those in remote locations where class members worked in two different offices and unlawful overtime policies applied to all locations); *Tucker v. Labor Leasing, Inc.*, 872 F. Supp. 941 (M.D. Fla. 1994)(holding that plaintiffs were not entitled to approval of class notice seeking unpaid overtime compensation where they failed to establish that clerks at a truck terminal were similarly situated to other employees at other terminals operated by the same trucking company and related companies because there was no evidence about pay provisions or job requirements and the wage rate decisions were made on a terminal-by-terminal basis); and *Hall v. Burk, No. Civ. 301CV2487H, 2002 U.S. Dist. LEXIS 4163, 2002 WL 413901 (N.D. Tex. Mar. 11, 2002)*(denied motion for notice of a collective action where plaintiff only made unsupported assertions that other employees did not receive overtime payments in accordance with FLSA). In sum, Trident contends that Plaintiffs have failed to make a showing by affidavit **[*17]** or other evidence that demonstrates a sufficient factual nexus between their situations and the situations of current and former employees in Trident warehouses other that Houston that was caused by a single decision, policy or plan which affected all such individuals. The court should decline to authorize notices.

Alternatively, argue Defendants, if the Court grants the motion for Class Notice, the notice should be limited to a group comprised of hourly "steel workers" who worked in Trident's Houston warehouse facility during the three years preceding the date of the Court's ruling on Plaintiff's motion for class notice. If the Court so decides, Plaintiffs request ten days to submit an alternative proposed notice.

**Plaintiffs' Reply**

In their reply (# 18), Plaintiffs argue that Robert Freytag's declaration actually supports class notice by establishing that (1) two representative Plaintiffs and seven opt-in Plaintiffs are all employees of Trident, not independent contractors; (2) no exemptions apply to any of the Plaintiffs; (3) the nine employees each worked more than forty hours on a regular basis; (4) Trident did not pay the current nine Plaintiffs overtime pay; and (5) Plaintiffs are **[*18]** aware of dozens of other employees who were subject to the same payroll policy, many of whom have expressed an interest in joining this suit. Freytag's declaration was notarized in Dallas County, presumably because he works in Trident's Dallas headquarters. His declaration and Trident's Employee Handbook, which Freytag references, further support class notice by establishing the following facts: (1) Freytag, as Trident's CFO, is familiar with the payroll policies and practices of each of the thirteen warehouse facilities; (2) Trident has companywide policies and procedures that apply to all of its thirteen warehouses; (3) Trident's Employee Handbook establishes a companywide policy and practice for all thirteen warehouses regarding clocking in and out (Ex. 5 at 11 attached to # 18); (4) employees from all thirteen locations are instructed to contact their branch manager or Dean M. Hlas in Human Resources by calling a Dallas number (Ex. 5 at 1); (5) as CFO, Freytag was aware of and condoned the Houston practice of not paying overtime to certain workers even though they were working more than forty hours in a work week; and (6) as CFO, Freytag states that Trident has a company wide policy **[*19]** of allowing, if they so chose, each of the twelve other warehouse facilities to not pay overtime (Ex. 1 at P 4).

Plaintiffs insist that this case does not involve exemption defenses, but payment of straight time for overtime hours. Trident does not address its concession that the representative Plaintiffs were non-exempt "employees" who were denied overtime pay and has thus abandoned its defense that these workers were independent contractors at any time. Moreover by conceding Houston plaintiffs are employees, argue Plaintiffs, Trident removes the hiring practice from the analysis. Plaintiffs are members similarly situated with respect to the company wide payroll practice identified by Freytag and suffered by Plaintiffs--it does not matter what job a person performed or where he performed it. The payroll practice defines the class, not the job titles, responsibilities, or location of the practice, which are

irrelevant. See *Harper v. Lovett's Buffet, Inc., 185 F.R.D. 358, 364 (M.D. Ala. 1999)*(concluding that although the hourly wage employees held different jobs as servers, food and salad bar workers, cooks, dishwashers, hostesses, bakers and busboys, they were similarly situated to **[\*20]** named Plaintiffs in their pay provisions and, most important, the case does not involve the applicability of the professional exemption to the overtime provision of the FLSA, so the job requirements of Plaintiffs' and the putative class members' employment positions are not at issue).

Plaintiffs contend that this phase of litigation does not require the substantial evidence one would expect post-discovery for a summary judgment to be granted; it is because discovery has not been completed that the standard for class notice is so lenient. They argue that once discovery is completed, it will show that Trident takes advantage of hourly-paid, low wage earners from other countries who lack a formal education and who speak English poorly, if at all. They also insist that the practice took place not only in Houston, but in all of Texas and other southern states that have attracted workers from other countries precisely because they tolerate such wage violations. At the notice stage of a collective action, the court should not engage in merit-based analysis. *Krueger v. New York Tel. Co., 1993 U.S. Dist. LEXIS 9988, 1993 WL 276058, \*2 (S.D.N.Y. July 21, 1993)*("[E]ven if Plaintiffs' claims turn out to be meritless or, in **[\*21]** fact all Plaintiffs turn out not to be similarly situated, notification at this stage rather than after further discovery, may enable more efficient resolution of the underlying issues in the case.").

Moreover, contend Plaintiffs, geographic commonality is not necessary to meet the "similarly situated" requirement for a FLSA collective action; instead the focus is on whether the employees were impacted by a common policy. *Sedtal v. Genuine Parts Co., Civ. A. No. 1:08-CV-413-TH, 2009 U.S. Dist. LEXIS 63261, 2009 WL 2216593, \*5 (E.D. Tex. July 23, 2009)*. See also *Falcon v. Starbucks Corp., 580 F. Supp. 2d 528, 539-40 (S.D. Tex. 2008)*(finding Plaintiffs were "similarly situated" because they were subject to the same FLSA violation, even though they were store managers working in various locations under supervision of different individuals); *Donohue v. Francis Services, Inc., No. Civ. A. 04-170, 2004 U.S. Dist. LEXIS 11525, 2004 WL 1406080 (E.D. La. June 22, 2004)*(holding that employers should not be able to "escape FLSA liability by making sure to underpay vast numbers" of their employees and then claim that the class definition is too broad).

Plaintiffs charge that Trident wants to limit class notice to Houston simply by asserting that its illegal **[\*22]** conduct did not take place outside of Houston while objecting to discovery of evidence that would confirm or deny the allegations. They maintain that this procedural "catch 22" is the entire purpose behind the lenient standard for granting class notice early in a case. They cite a number of cases where courts have routinely granted class notice based on a single or very few affidavits, including this Court. *See, e.g., Moore v. Special Distribution Services, Inc., Civ. A. No. H-06-3946, 2007 U.S. Dist. LEXIS 58071, 2007 WL 2318478, \*2 (S.D. Tex. Aug. 8, 2007)*.

Plaintiffs point to the two-step certification process, employing at the first stage a "lenient" test that requires only a "reasonable basis" for the allegations in the Complaint. *Grayson, 79 F.3d at 1097*. Plaintiffs complain that Trident is asking the court to apply the stricter analysis that applies after discovery is completed and in the context of a motion for decertification, which would be Trident's remedy. *2007 U.S. Dist. LEXIS 58071, [WL] at \*2*. Plaintiffs insist that Trident would not be harmed by granting class notice to include workers outside of Houston. Trident has not objected to discovery or class notice on the grounds that it would be unduly burdensome or costly to obtain, **[\*23]** nor has Trident argued that the class as defined by Plaintiffs would be difficult to identify (hourly-paid manual laborers who worked more that forty hours in the last three years). The law requires Trident to keep track of the address and other contact information about its employees. Plaintiffs' counsel would bear the initial costs of mailing the notices and monitoring the opt-ins.

Alternatively, if the Court will allow notice only for the Houston workers at this time, Plaintiffs ask the Court not to deny with prejudice discovery for workers outside of Houston.

In a supplemental brief to rebut Defendants' argument that the overtime violations occurred only at their Houston work site, Plaintiffs attach the declaration of a current employee of Defendants for the last two and a half years, Cindy Ostrander, who reviewed payroll records of employees of Defendants' Boring Plant in Katy, Texas and witnessed FLSA violations in Defendants' payment for overtime hours to manual laborers. # 20, Ex. A.

**Relevant Law**

2010 U.S. Dist. LEXIS 15104, *23

To state a claim under the FLSA, an employee must allege that (1) an employer-employee relationship existed, (2) coverage under the FLSA existed, and (3) a violation of the statutory standards **[*24]** occurred. *Special Distribution Services, 2007 U.S. Dist. LEXIS 58071, 2007 WL 2318478, at *1*, citing Laurie E. Leader, *Wages & Hours: Law and Practice* § 9.03[2]. Asserting a cause of action under *section 216(b)* for employees against employers violating the overtime compensation requirements, Plaintiffs here assert that they are non-exempt, manual labor employees of Trident involved in steel work and paid an hourly wage. They claim that Trident violated *section 207(a) of FLSA* when it failed to pay overtime pay for work in excess of forty hours per week.

In *Special Distribution Services, 2007 U.S. Dist. LEXIS 58071, 2007 WL 2318478, at *2*, this Court discussed the certification of a collective action suit, which is generally subject to a two step process:

> [I]n FLSA cases, [this Court] adheres to the two stage class certification methodology described in *Mooney v. Aramco Services, Co., 54 F.3d 1207, 1212 (5th Cir. 1995)*. Under this methodology, "the trial court approaches the 'similarly situated' inquiry via a two-step analysis." *Mooney, at 1213*. At the "notice stage," the court examines the pleadings and any affidavits which have been submitted to determine whether notice of the action should be given to potential class members. *Id. at 1213-14*. **[*25]** "Because the court has minimal evidence, this determination is usually made using a fairly lenient standard [] and typically results in "conditional certification of a representative class."

The determination generally is based only on the pleadings and the affidavits that have been submitted. Plaintiffs must submit "'some identifiable facts or legal nexus [that] bind [*sic*] the claims so that hearing the cases together promotes judicial efficiency.'" *Maynor v. Dow Chemical Co., 671 F. Supp. 2d 902, No. Civ. A. G-07-504, 2009 U.S. Dist. LEXIS 110031, 2009 WL 4280837, *26 (S.D. Tex. Nov. 25, 2009)*, quoting inter alia *Barron v. Henry County Sch. Sys., 242 F. Supp. 2d 1096, 1103 (M.D. Ala. 2003)*. *See also Heagney v. European Am. Bank, 122 F.R.D. 125, 127 (E.D.N.Y. 1988)*(opining that certification is proper when some factual nexus binds the named plaintiffs and potential class members as victims of a particular alleged policy or practice). If the Court conditionally certifies a representative class, the Court then issues notice to potential class members and the action proceeds as a

collective action during discovery. *Mooney, 54 F.3d at 1213-14*. The decision whether to certify a collective action lies within the district **[*26]** court's discretion. *Id. at 1213*.

In *Special Distribution Services*, this Court also addressed the second stage of the analysis, which applies a stricter standard:

> The second stage is usually precipitated by a [defendant's] motion for "decertification" after discovery is largely complete. *[Mooney, 54 F.3d at 1214]*. If the additional claimants are similarly situated, the district court allows the representative action to proceed. If the claimants are not similarly situated, the district court decertifies the class and the opt-in plaintiffs are dismissed without prejudice. In determining whether there are other similarly situated individuals justifying notice, the court examines whether there are other employees "who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." *Dybach v. Fla. Corrections, 942 F.2d 1562, 1567-68 (11th Cir. 1991)*.

*2007 U.S. Dist. LEXIS 58071, 2007 WL 2318478 at *2*. Furthermore, near the end of discovery the court should have more information on which to make a decision about whether the named Plaintiffs and the claimants are "similarly situated." At this stage, the plaintiffs have the burden of demonstrating that they are similarly situated. *Maynor, 2009 U.S. Dist. LEXIS 110031, 2009 WL 4280837 at *26*. **[*27]** They do not have to show that they are "identically situated." *Id.* Rather the issues is if there is "'a demonstrated similarity among the individual situations . . . some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice.]'" *Proctor, 250 F.R.D. at 280*, citing *Heagney, 122 F.R.D. at 127*. The court examines three factors: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant which appear to be individual to each plaintiff; and (3) fairness and procedural concerns." *Maynor, 2009 U.S. Dist. LEXIS 110031, 2009 WL 4280837 at *26*, citing *Proctor v. Allsups Convenience Stores, Inc., 250 F.R.D. 278, 280 (N.D. Tex. 2008)*; *see also Escobedo v. Dynasty Insulation, Inc., No. EP-08-CV-137-KC, 2009 U.S. Dist. LEXIS 66836, 2009 WL 2382982, *5 (W.D. Tex. July 31, 2009)*. These factors are not mutually exclusive and there is significant overlap. *Id.* The existence of a common policy, plan or practice that affects all class members

2010 U.S. Dist. LEXIS 15104, *27

helps to show a similar factual setting. *2009 U.S. Dist. LEXIS 66836, [WL] at *27*, citing *Falcon v. Starbucks Corp., 580 F. Supp. 2d 528, 534-35 (S.D. Tex. 2008)*. A court can preclude a plaintiff's **[*28]** right to proceed collectively only if "'the action relates to circumstances personal to the plaintiff rather than any generally applicable policy or practice.'" *Basco, 2004 U.S. Dist. LEXIS 12441, 2004 WL 1497709 at *5*.

In decertifying a class, many courts emphasize that class members were supervised by numerous different managers and different locations, stores, or offices. *Id., citing Proctor, 250 F.R.D. at 281*, and *Johnson v. TGF Precision Haircutters, Inc., 2005 U.S. Dist. LEXIS 44259, 2005 WL 1994286, at *2 (S.D. Tex. Aug. 17, 2005)*. Nevertheless, "geographic commonality is not necessary to satisfy the FLSA collective action's 'similarly situated' requirement." *Sedtal, 2009 U.S. Dist. LEXIS 63261, 2009 WL 2216593 at *5* (and cases cited therein)(concluding therefore that imposing geographic restrictions on discovery would be somewhat arbitrary and could obscure relevant information), citing *Falcon v. Starbucks Corp., 580 F. Supp. 2d at 539-40*. Therefore "information about employees in other parts of the country is relevant to Plaintiffs' claims." *Sedtal, 2009 U.S. Dist. LEXIS 63261, 2009 WL 2216593 at *5*. "The focus is on whether the employees were impacted by a common policy." *Id.*

The court should also consider if it can "coherently manage the class in a manner that will not prejudice any party." **[*29]** *Proctor, 250 F.R.D. at 281*, citing *TGF Precision, 2005 U.S. Dist. LEXIS 44259, 2005 WL 1994286, at *7*. The case will have great manageability problems if there is no single decision, policy or plan that affects the plaintiffs. *Id.*

If the district court finds that the plaintiffs and claimants are similarly situated, the court permits the representative action to go forward to trial. *Mooney, 54 F.3d at 1214*. Otherwise, if the factual disparities are too great and the court decertifies the class, the opt-in plaintiffs are dismissed without prejudice and the original plaintiff proceeds with his individual claims. *Maynor, 2009 U.S. Dist. LEXIS 110031, 2009 WL 4280837 at *26*.

Under the FLSA statute of limitations, an employee may commence an action within two years after the cause of action accrues or, if it is a willful violation, within three years. *29 U.S.C. § 255(a)*. This action was filed on June 1, 2009. In a collective action, the statute of limitations for a named plaintiff runs from the date that the plaintiff

files his complaint, while it begins to run for an opt-in plaintiff from the opt-in date. *Ikossi-Anstasiou v. Board of La. State U., 579 F.3d 546, 552-53 (5th Cir. 2009)*; *Sandoz v. Cingular Wireless LLC, 553 F.3d 913, 916-17 (5th Cir. 2008)*, **[*30]** citing *Atkins v. Gen. Motors Corp., 701 F.2d 1124, 1130 n.5 (5th Cir. 1983)*. To demonstrate a willful violation of FLSA, a plaintiff must show that the defendant "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133, 108 S. Ct. 1677, 100 L. Ed. 2d 115 (1988)*, citing *Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 105 S. Ct. 613, 83 L. Ed. 2d 523 (1985)*. [13] Here the fact that Trident refused to respond to initial discovery requests is relevant to the factual determination of whether it acted willfully.

"The doctrine of equitable tolling preserves a plaintiff's claim when strict application of the statute of limitations would be inequitable." *United States v. Patterson, 211 F.3d 927, 930 (5th Cir. 2000)*. For the **[*31]** equitable tolling to apply to suspend the statute of limitations, the plaintiff must show that "despite all due diligence, [he] is unable to discover essential information bearing on the existence of his claim." *Pacheco v. Rice, 966 F.2d 904, 906-07 (5th Cir. 1992)*. For example, it may apply when "the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Patterson, 211 F.3d at 930-31*. Under a related doctrine, an employer may be estopped from asserting the limitations defense if the employer misrepresented or concealed information necessary to support a claim. *Rhodes v. Guiberson Oil Tools Div., 927 F.2d 876, 878-79 (5th Cir. 1991)*(although both equitable tolling and equitable estoppel can involve concealment by the employer, "[e]quitable tolling focuses on the employee's ignorance, not on any possible misconduct by the employer.").

After reviewing the briefs and the relevant law, applying the lenient standard appropriate at this notice stage of conditional certification, the Court in its discretion finds

---

[13] "'An employer who is armed with [knowledge that an employee is working overtime] cannot stand idly by and allow an employees to perform overtime work without proper compensation, even if the employee does not make a claim for overtime compensation.'" *Maynor, 2009 U.S. Dist. LEXIS 110031, 2009 WL 4280837 at 25*, quoting *Harvill v. Westward Communications, LLC, 433 F.3d 428, 441 (5th Cir. 2005)*, quoting *Newton v. City of Henderson, 47 F.3d 746, 748 (5th Cir. 1995)*.

that Plaintiffs' motion for class notice (# 13) should be granted because they have made a sufficient [*32] factual showing of a similarly situated group of potential plaintiffs and a reasonable basis that a class exists, so that their action should proceed conditionally on a collective basis. Through Trident's answers to interrogatories they have demonstrated that they are non-exempt, hourly-paid manual labor employees of Trident. In addition Plaintiffs have submitted sworn declarations, with supporting representative time-sheets and pay checks attached, from four former manual labor employees at Trident's Houston warehouse facility, attesting that they were paid an hourly rate, that they punched a time clock to record their hours worked, that their regular work required them to work more than forty hours per week and that they typically worked more than fifty, and that they identified other employees who might join this action if it were certified as a collective action. Plaintiffs also filed a sworn declaration from Cindy Ostrander (attached to # 20), an employee of The Richardson Trent Company for the last two and one-half years, who from personal knowledge demonstrated a practice or plan of failing to pay overtime to manual laborers that spread beyond Trident's Houston facilities:

> Based [*33] on my information and belief, the company has not been paying overtime to its manual laborers outside of Houston for years. For example, I have reviewed payroll records for Trident workers at the company's Boring Plant in Katy, Texas. I know based on those records that the company did not pay overtime pay to many of the manual laborers who were paid by the hour when they worked more than 40 hours in a work week. [14]

The record reflects that eight individuals have filed consent forms to join a collective class action. # 5 (G. Garcia, F. Garcia, J. Roque and J. Martinez), 7 (Benjamin Garcia), 8 (David Garcia), 10 (Eulogio Fabian), and 21 (Eusebio P. Hernandez). Moreover other potential plaintiffs have been named in Plaintiffs'

motion. There is certainly a sufficient numberto establish a collective action as the most efficient way to proceed with the litigation. Although Defendants emphasize they have work sites around the country, in fact they have only thirteen, most of which are here in Texas and two of which have been closed. As noted, geographic location is not relevant; a common policy, plan, or practice demonstrates a similar factual setting for purposes of showing workers as "similarly [*34] situated." _Falcon v. Starbucks, 580 F. Supp. 2d at 534-35_ (and cases cited therein). Here the alleged failure to pay proper overtime compensation to hourly manual laborers is the legal nexus that binds the class members' claims. After reviewing and hearing Plaintiffs' motion to compel, Judge Stacy ordered Defendants to respond to interrogatories 14 and 20, relating to compensation for potential class members at all Trident's locations, though she did limit the time period to information from January 1, 2006. [15] # 27. In sum, at this stage, the declarations and the handbook constitute sufficient evidence that the proposed class members were allegedly victims of a common policy violating the FLSA.

Although Trident has asked for additional time to review Plaintiff's proposed notice, Plaintiffs' motion with that proposed notice was filed on September 4, 2009. # 13, Exs. 9 and 10. Trident has had plenty of time to respond to it; any additional delay means the statute of limitations may preclude more putative class members' [*36] claims by delaying their notice and opportunity to opt in. This Court has discretion regarding the form and the content of such notice under _§ 216(b)_. _Hoffman-La Roche, 493 U.S. at 169-70_. Moreover it has reviewed and now approves the proposed notice, but points out three required changes to update the year before mailing: in Exhibit 9, paragraph 3 (which currently reads,

---

[14] Trident has objected to a class covering all of its thirteen facilities on the ground that Plaintiffs' affidavits all come from steel workers in the Houston facility. Ostrander's declaration offers evidence outside of that work site. "[T]o allege a common policy at the notice stage, Plaintiffs simply need to submit affidavits from other employees alleging that they worked at different locations and were subject to a similar overtime policy." _Ali v. Sugarland Petroleum, No. 4:09cv0170, 2009 U.S. Dist. LEXIS 118829, 2009 WL 5173508, *5 n.4 (S.D. Tex. Dec. 22, 2009)_.

---

[15] Interrogatory [*35] No. 14 asked Trident to "Identify all hourly-paid employees (current and former) by name, address, phone number, social security number, position and dates of employment with the Defendant who have not been paid one and one-half their regular hourly rate for hours worked over 40 in at least one work for the last six years. Interrogatory 20 asked Trident to "Plead identify all persons who worked for The Richardson Trident Company d/b/a The Trident Company who were sent a 1099 (or otherwise treated as an independent contractor for payroll purposes) who were also paid on an hourly basis during any time in the last seven years. This interrogatory applies to all locations where Defendant does buusiness, not just in Houston. This interrogatory also applies to the divisions of Defendant known as (1) Altair Electronics, (2) The Altair Company and (3) Altair Plastics."

"If you want to make a claim for additional wages, you must submit you Notice of Consent by __, 2009"); in the last paragraph of Exhibit 10 (which currently states, "The form must be received no later than the close of business on __, 2009."); and in the Spanish translation. The Court notes that the general rule is that absent reasonable objections to plaintiffs' proposed class notice, "the plaintiffs should be allowed to use the language of their choice in drafting the notice." *Gandhi v. Dell, Inc., No. 1:08cv248-JRN, 2009 U.S. Dist. LEXIS 96793, 2009 WL 3427218, *2 (W.D. Tex. Oct. 20, 2009)*, *citing King v. ITT Continental Baking Co., No. 84 C 3410, 1986 U.S. Dist. LEXIS 29321, 1986 WL 2628, at *2 (N.D. Ill. Feb. 1986)*. The only changes made by the Court result from its "duty to ensure that the notice is fair and accurate." *Id.*

Accordingly, the Court

ORDERS that Plaintiffs' **[*37]** motion for notice to potential class members (# 13) is GRANTED.

This Court CONDITIONALLY CERTIFIES this matter as a collective action under *29 U.S.C. § 216(b)* with respect to the class of manual laborers (regardless whether they were classified as employees or independent contractors) who were paid hourly and who worked more than forty (40) hours in a week for Defendants The Richardson Trident Company, The Richardson Trident Company d/b/a The Trident Company, Trident Metals d/b/a The Trident Company and The Trident Company at some time between May 1, 2006 forward.

The Court further

ORDERS that Plaintiffs' counsel shall mail a copy of the date-corrected "Notice of Rights Regarding Overtime Pay" and "Notice of Consent," attached as Exhibits 9 and 10 to Plaintiffs' motion for class notice, to all persons on the list of workers (provided by Trident in accordance with Judge Stacy's order) immediately or within five business days of receiving the list from Trident. The Notice of Rights Regarding Overtime Pay and Notice of Consent shall be translated into Spanish by a qualified translator and shall be mailed with the English version. Plaintiffs' counsel shall include a self-addressed, stamped **[*38]** envelope in the mailing. Plaintiffs shall bear the costs of preparing and distributing the notice. *Johnson v. TGF Precision, 319 F. Supp. 2d at 755*.

The Class Members shall have 60 days from the date of the mailing of the Notice to file their Notice of Consent, opting into this lawsuit as plaintiffs, unless good cause

can be shown as to why the consent was not postmarked prior to the deadline.

Furthermore, Trident is hereby prohibited from communicating directly or indirectly with any current or former hourly employees about any matters which touch or concern the settlement of any outstanding wage claims or other matters related to this suit during the opt-in period. This order shall not restrict Trident from discussing with any current employee matters that arise in the normal course of business.

This Order shall not prejudice Trident's right to file a motion to decertify this case at a later date.

Plaintiffs' motion for emergency ruling (# 28) is MOOT.

**SIGNED** at Houston, Texas, this 22nd day of February, 2010.

/s/ Melinda Harmon

MELINDA HARMON

UNITED STATES DISTRICT JUDGE

_____

**End of Document**