# EXHIBIT 10

⬥ Positive
As of: June 6, 2018 10:38 PM Z

## *Maynor v. Dow Chem. Co.*

United States District Court for the Southern District of Texas, Galveston Division

May 28, 2008, Decided; May 28, 2008, Filed

CIVIL ACTION NO. G-07-0504

**Reporter**

2008 U.S. Dist. LEXIS 42488 *; 2008 WL 2220394

ROY MAYNOR, Plaintiff, v. THE DOW CHEMICAL COMPANY, Defendant.

**Subsequent History:** Partial summary judgment granted by, Motion granted by, in part, Motion denied by, in part, Motion denied by, Summary judgment denied by *Maynor v. Dow Chem. Co., 2009 U.S. Dist. LEXIS 110031 (S.D. Tex., Nov. 25, 2009)*

## Core Terms

employees, Skills, training, notice, Site, similarly situated, individualized, skill level, Assessments, compensate, certification, requirements, settlement, damages, collective bargaining agreement, violations, argues, collection action, lunch break, conditional, Initiative, overtime, records, putative class member, Courts, spent, waive, covered employee, discipline, parties

## Case Summary

### Procedural Posture

In a suit under the Fair Labor Standards Act (FLSA), *29 U.S.C.S. § 201 et seq.*, plaintiff former employee alleged that defendant former employer failed to pay certain of its employees overtime when they worked more than 40 hours in a week by participating in a mandatory training and testing program. The employee moved for conditional certification of a class.

### Overview

The employee sought conditional certification of a class consisting of current and former members of a union employed by the employer at a certain facility, who participated in the a certain training program between October 9, 2004 and October 9, 2007 (the date the complaint was filed). This case was at the "notice stage" of the Lusardi analysis. Because the parties presented minimal evidence, in the form of affidavits, the decision whether to issue notice to potential class members was made using a fairly lenient standard. The employee satisfied the "fairly lenient standard" of the first stage of the Lusardi analysis. The potential for individualized damages assessments was not a sufficient basis to refuse conditional certification and the issuance of notice to the proposed class. The facts that the employee was the only employee fired for insubordination for refusing to submit a release and that one employee currently worked for the union rather than the employer did not preclude a similarly-situated finding for a properly defined class. It did not appear that the putative class members waived their right to assert claims against the employer by accepting the payments.

### Outcome

Conditional certification was granted.

## LexisNexis® Headnotes

Business & Corporate Compliance > ... > Wage & Hour Laws > Scope & Definitions > Overtime & Work Periods

*HN1*[⬇]  **Scope & Coverage, Overtime & Work Periods**

*29 U.S.C.S. § 207(a)* requires covered employers to compensate nonexempt employees at overtime rates for time worked in excess of statutorily defined maximum hours.

Business & Corporate Compliance > ... > Wage & Hour Laws > Scope & Definitions > Overtime & Work Periods

2008 U.S. Dist. LEXIS 42488, *42488

Labor & Employment Law > Wage & Hour
Laws > Remedies > Class Actions

**HN2**[🔽] **Scope & Coverage, Overtime & Work Periods**

*29 U.S.C.S. § 216(b)* creates a cause of action for employees against employers violating the Fair Labor Standards Act, *29 U.S.C.S. § 201 et seq.*, overtime compensation requirements.

Labor & Employment Law > Wage & Hour
Laws > Remedies > Class Actions

**HN3**[🔽] **Remedies, Class Actions**

See *29 U.S.C.S. § 216(b)*.

Labor & Employment Law > Wage & Hour
Laws > Remedies > Class Actions

**HN4**[🔽] **Remedies, Class Actions**

*29 U.S.C.S. § 216(b)* establishes an opt-in scheme under which plaintiffs must affirmatively notify the court of their intention to become parties to the suit. District courts have discretion in deciding whether to order notice to potential plaintiffs.

Labor & Employment Law > Wage & Hour
Laws > Remedies > Class Actions

**HN5**[🔽] **Remedies, Class Actions**

Courts recognize two methods to determine whether to authorize notice to similarly situated employees advising them of their right to join a Fair Labor Standards Act, *29 U.S.C.S. § 201 et seq.*, collective action. These methods are the two-step Lusardi approach and the class-action based Shushan approach. Most courts use the "two-step ad hoc approach" as the preferred method for the similarly-situated analysis rather than the *Fed. R. Civ. P. 23* requirements.

Labor & Employment Law > Wage & Hour
Laws > Remedies > Class Actions

**HN6**[🔽] **Remedies, Class Actions**

In the Fair Labor Standards Act, *29 U.S.C.S. § 201 et seq.*, context, Lusardi and its progeny are remarkable in that they do not set out a definition of "similarly situated," but rather they define the requirement by virtue of the factors considered in the two-stage analysis. The first step of analysis is the "notice stage" in which the district court decides whether to issue notice to potential class members. A court's decision is often based only on the pleadings and affidavits that have been submitted. Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class that provides potential class members with notice and the opportunity to opt-in. Even this lenient standard appears to require substantial allegations that potential members were together the victims of a single decision, policy, or plan. A factual basis for the allegations is needed to satisfy this first step.

Labor & Employment Law > Wage & Hour
Laws > Remedies > Class Actions

**HN7**[🔽] **Remedies, Class Actions**

At the first stage of the two-step Lusardi approach to determine whether to authorize notice to similarly situated employees advising them of their right to join a Fair Labor Standards Act, *29 U.S.C.S. § 201 et seq.*, collective action, there must be a showing of some identifiable facts or legal nexus that bind the claims so that hearing the cases together promotes judicial efficiency. A court may deny plaintiffs' right to proceed collectively if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice. If a court conditionally certifies a class, the action proceeds as a collective action during discovery.

Labor & Employment Law > Wage & Hour
Laws > Remedies > Class Actions

**HN8**[🔽] **Remedies, Class Actions**

The second stage of the two-step Lusardi approach to determine whether to authorize notice to similarly situated employees advising them of their right to join a Fair Labor Standards Act, *29 U.S.C.S. § 201 et seq.*,

collective action, typically occurs when discovery is largely complete and the defendant moves to "decertify" the conditionally certified class. At that point, the court makes a factual determination as to whether there are similarly situated employees. If the district court finds that the claimants are similarly situated, the collective action may proceed. If the court decertifies the class, the opt-in plaintiffs are dismissed without prejudice and the original plaintiffs proceed on their individual claims. Notice does not issue unless the court conditionally certifies the case as a collective action.

Evidence > Burdens of Proof > Allocation

Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions

**_HN9_**[⬇]  **Burdens of Proof, Allocation**

In the Fair Labor Standards Act, _29 U.S.C.S. § 201 et seq.,_ context, at the notice stage of the Lusardi analysis, a plaintiff must make a minimal showing that: (1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit. Some factual support for the complaint allegations of class-wide policy or practice must be shown to authorize notice.

Evidence > Burdens of Proof > Allocation

Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions

**_HN10_**[⬇]  **Burdens of Proof, Allocation**

Putative class members must show that they were affected by a common policy, plan, pattern, or practice to proceed collectively under _29 U.S.C.S. § 216(b)._

Evidence > Burdens of Proof > Allocation

Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions

**_HN11_**[⬇]  **Burdens of Proof, Allocation**

In the context of _29 U.S.C.S. § 216(b),_ a court need not find uniformity in each and every aspect of employment to determine a class of employees are similarly situated. A plaintiff need only demonstrate a reasonable basis for the allegation that a class of similarly situated persons exists. Courts have refused to permit Fair Labor Standards Act (FLSA), _29 U.S.C.S. § 201 et seq.,_ suits to proceed as collective actions if the individualized inquiries required would eliminate the economy of scale envisioned by the FLSA collective action procedure.

Business & Corporate Compliance > ... > Wage & Hour Laws > Scope & Definitions > Overtime & Work Periods

Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions

**_HN12_**[⬇]  **Scope & Coverage, Overtime & Work Periods**

In the Fair Labor Standards Act, _29 U.S.C.S. § 201 et seq.,_ context, in unpaid overtime "off-the-clock" cases, the need to determine class members' damages on an individualized basis should not bar conditional certification if the proposed class is otherwise similarly situated.

Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions

**_HN13_**[⬇]  **Remedies, Class Actions**

In the Fair Labor Standards Act, _29 U.S.C.S. § 201 et seq.,_ context, courts use several mechanisms to handle damages determinations. One approach is to bifurcate cases into liability and damages phases. Courts also permit the use of representative testimony.

Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions

**_HN14_**[⬇]  **Remedies, Class Actions**

In the Fair Labor Standards Act, _29 U.S.C.S. § 201 et seq.,_ context, concerns about the inherently individualized nature of off-the-clock overtime cases are of the sort that are appropriate for consideration during the second-stage of the Lusardi analysis, and not during

the initial "notice" stage.

Civil Procedure > Settlements > Effect of Agreements

Labor & Employment Law > Wage & Hour Laws > Remedies > General Overview

*HN15*[ ] Settlements, Effect of Agreements

Acceptance of a payment reached in a Department of Labor (DOL) settlement amounts to a waiver only if the employee agree to accept the payment the DOL determines to be due and it is payment in full. A settlement agreement has been "supervised" if the DOL "played a significant role" by investigating the claim, determining the amount owed, and sending out or approving a receipt stating that acceptance waives the right to sue.

Business & Corporate Compliance > ... > Wage & Hour Laws > Scope & Definitions > Overtime & Work Periods

Civil Procedure > Settlements > Effect of Agreements

Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions

Labor & Employment Law > Wage & Hour Laws > Remedies > General Overview

*HN16*[ ] Scope & Coverage, Overtime & Work Periods

The Department of Labor apparently distinguishes among settlements. When it thinks it has achieved "enough" for the employees--something close to full payment of the wages and overtime due--it sends them agreements explicitly releasing the right to sue, and it requests them to sign these forms if they wish to take the money. When the Department thinks it has fallen far short, it does not solicit these signatures. The Department's decision is the kind of supervision that *29 U.S.C.S. § 216(c)* contemplates. The idea is that federal supervision replaces private bargaining, and that the right to receive full statutory wages and overtime is not to be extinguished without the assent of both employee and Secretary. If the Secretary withholds assent, he

declines to send out the form soliciting agreement.

Civil Procedure > Settlements > Effect of Agreements

Labor & Employment Law > Wage & Hour Laws > Remedies > General Overview

*HN17*[ ] Settlements, Effect of Agreements

In the Fair Labor Standards Act, *29 U.S.C.S. § 201 et seq.*, context, "agreement" is more than the acceptance of funds, as it must exist independent of payment. Typically an employee manifests assent by signing a receipt (either the standard WH-58 or another form authorized by the Department of Labor (DOL)), which puts the employee on notice of the resulting waiver. An employee may assent by cashing a check issued under a DOL-supervised settlement if a release was provided with the check, but merely cashing the check does not release the employee's claims absent a release.

**Counsel:** [*1] For Roy Maynor, Kenneth Nugent, Archie Walker, Jr, Martin R Martinez, Jose A Molina, Charlie Thompson, Jr, James Arnold, Anthony Moody, Cornell Porter, Rolf Miller, Eric Wells, Leonard Cartemelia, John Haynes, Rogelio Luna, Trancit Rodriguez, Jobil Wallace, Patrick Lawson, Plaintiffs: Mark Siurek, LEAD ATTORNEY, Warren & Siurek, Houston, TX.

For The Dow Chemical Company, Defendant: Nancy Lynne Patterson, Morgan, Lewis & Bockius LLP, Houston, TX.

**Judges:** Lee H. Rosenthal, United States District Judge.

**Opinion by:** Lee H. Rosenthal

# Opinion

### MEMORANDUM AND ORDER

In this suit under the Fair Labor Standards Act ("FLSA"), *29 U.S.C. § 201 et seq.,* Roy Maynor alleges that his former employer, The Dow Chemical Company, failed to pay certain of its employees overtime when they worked more than forty hours in a week by participating in a mandatory training and testing program. Maynor has

moved for conditional certification of a class consisting of current and former members of the International Union of Operating Engineers Local No. 564 employed by Dow at its facility in Freeport, Texas, who participated in the Skills Initiative training program between October 9, 2004 and October 9, 2007 (the date the complaint was filed). (Docket **[*2]** Entry No. 16). In response, Dow argues that the putative class members are not similarly situated; the proposed class is overbroad; and notice should not issue. (Docket Entry No. 32). Maynor has replied. (Docket Entry No. 33). Based on the motion, response, and reply, the parties' submissions, and the applicable law, this court grants Maynor's motion in part by conditionally certifying the class but defining it more narrowly than he proposes. The reasons are set out in detail below. This order also sets a deadline of June 9, 2008 for the parties to identify any disputes about the contents of the notice and a hearing of June 23, 2008 for the court to set a schedule and docket control order.

## I. Background

Dow hired Maynor in 1974 to work as an operator at the Freeport facility, which has over 5,000 employees. The International Union of Operating Engineers (the "Union") represents 958 hourly employees, including Maynor, at the Freeport facility. (Docket Entry No. 16, Exs. A). On May 14, 2003, a collective bargaining agreement between Dow and the Union became effective. Under Article XXXIV of that agreement, Union members hired before May 14, 2003 had to complete a "Foundational Skills Assessment" **[*3]** in six categories. [1] The

---

[1] Article XXXIV was broken into seven sections, each concerning a different training requirement. Section 1 provided:

> Foundational Skills Assessment will be required for employees hired **[*4]** prior to May 14, 2003. Employees required to obtain an associates degree will take the assessment upon completion of the degree. The Foundational Skills include the areas of Reading, Applied Mathematics, Locating Information, Teamwork, Applied Technology and Observation (the "Skill Category(s)"). In each Skill Category there are different Skill Levels, 3, 4, 5, 6 and 7 ("Skill Levels"). Each employee will be required to take a skills assessment to determine the level they are at, paid for by the COMPANY. Once the Skill Level has been determined, an employee will be expected to move up at least 2 Skill Levels per year until the employee has achieved the required level in all the Skill Categories. Employees must reach a Skill Level of 5 in

component at issue here is the Site Foundational Skills Program set out in Article XXXIV, Section 1. Once an employee's skill level was tested, the employee had to advance at least two skill levels per year until a certain level or "profile" in each category was met. The assessments were standardized tests administered by a national testing service at a nearby college. Employees could prepare by self-study, online training, classroom training, one-on-one tutoring, or no preparation at all if they passed the required two-level per year advancement. To comply with privacy and disclosure restrictions under the Family Educational Rights and Privacy Act, *20 U.S.C. § 1232g, et seq.,* Dow required employees subject to the Foundational Skills Assessment requirement to execute releases permitting Dow to receive their test results and information about the time they spent training. (Docket Entry No. 32, Ex. A at 3). Failure to execute a release was an offense subject to discipline. (*Id.*).

If an employee signed a release, Dow received information about the amount of time the employee spent taking online training. The hours were recorded by the testing service. The recording and reporting system did not monitor whether employees were actively using the online training modules. Instead, the system only tracked whether they **[*5]** were logged into the training program. As a result, the system did not record the actual time employees spent training, only the time employees were logged in. Because of this flaw, some employees, including Maynor, were able to record facially implausible amounts of time, such as more than twenty-four hours of training time in one day. Dow had no way to tell whether an employee had actually performed online training during all or any of the logged-in period. (Docket Entry No. 32, Exs. B, C).

Because the Site Foundational Skills program was begun in the middle of 2003, employees covered by the collective bargaining agreement were given until December 31, 2004 to satisfy the requirement that they advance two skill levels in one year. Over 500 covered employees satisfied the requirement, but 370 did not. Those who satisfied the requirement spent an average of 18.5 hours of training time to advance one skill level. (Docket Entry No. 32, Ex. A at 3-4). Some covered employees completed the Foundational Skills Assessment program without any training. (*Id.,* Ex. B at 2).

---

Locating Information and Teamwork and a Skill Level of 6 in the other four categories.

(Docket Entry No. 16, Ex. A-1).

In February 2005, Dow and the Union entered into an agreement addressing the appropriate discipline for employees who failed **[*6]** to achieve the required skill-level advancement. (Docket Entry No. 32, Ex. A-2). The Agreement, entitled "Skills Initiative -- Addressing Non-Compliances," stated that it was "created as a guideline for site consistency in addressing non-compliances as it relates to the contractual requirements on Foundational I & II skills initiatives," and provided "examples of different situations and the guidelines on how to address them" grouped into three "Tiers." (*Id.*). "Tier I" scenarios, including failing to sign the privacy release form, signing the form but not taking any Assessments, and signing the form but not having any activity after that, were to be addressed through a written warning or through progressive discipline "[i]f discipline above the level exists." (*Id.*). Signing the release form, taking the Foundational Skills Assessment, enrolling in training, but not advancing two skill levels, was classified as a "Tier II" scenario if the employee had less than forty hours of training and a "Tier III" scenario if the employee had forty or more hours of training. A Tier II scenario warranted progressive discipline up to time off without pay or a more severe penalty (but not termination) **[*7]** if the employee's last disciplinary action was time off without pay. A Tier III scenario would lead to an employee receiving a "letter of expectations" establishing a time frame for completing the required skill levels. (*Id.*).

Maynor refused to sign a release form. On February 3, 2005, Dow sent Maynor a letter stating that he had failed to meet the Site Foundational Skills program annual requirement; he would have until June 30, 2005 to satisfy the two-level requirement for the prior year; and that he would have until December 31 to satisfy the two-level requirement for 2005. On August 10, 2005, Dow sent Maynor a letter suspending him without pay for one day for failing to meet the skill-level requirement. (Docket Entry No. 32, Ex. A-3). Dow terminated Maynor for insubordination on February 7, 2006 because Maynor refused to sign the release. (*Id.,* Ex. A at 4).

On September 6, 2006, the Union filed a complaint with the Department of Labor ("DOL"). The Union alleged that Dow had violated the FLSA by failing to compensate employees for time spent training for and taking the Foundational Skills Assessments. (Docket Entry No. 32, Ex. A-4). The DOL investigated and concluded that because the **[*8]** training and assessments were "mandatory" and failure to participate and achieve certain results could lead to discipline, Dow was required to compensate employees for the time.

(Docket Entry No. 32, Ex. A at 4). Without admitting liability, Dow agreed to pay covered employees who participated in the Foundational Skills Program for up to 40 hours per year of training from mid-2005 through November 30, 2006. If an employee spent less than 40 hours of training during that period, Dow paid for the time actually spent in training. Dow also paid for the time spent taking the Skills Assessments. Dow agreed to expunge disciplinary records related to the Site Foundational Skills program. (*Id.,* Ex. A at 4-5). On January 14, 2008, the DOL sent Dow a letter stating that its FLSA violations had resulted in underpayment of $ 640,033.28 to 637 employees between July 1, 2005 and June 20, 2007. The letter confirmed that Dow had agreed to pay these amounts. (Docket Entry No. 32, Ex. D). The payments were made in August and November 2007. (*Id.,* Ex. A at 5).

Dow sent employees a letter explaining that they would be receiving the payments. The letter stated:

> You will be receiving a payment from The Dow **[*9]** Chemical Company ("Dow") and we want to inform you of the purpose of the payment and give you some background on how the payment came to be made.
> . . . .
> U.S. Department of Labor ("DOL") recently completed a review of how Dow administered certain skills initiative training in the past. As a result of this review, Dow and the DOL have reached an agreement addressing the question of compensability of time that some employees spent on this training.
> The skills initiative practice which was in question had been negotiated and agreed to by the Union and the Company in 2003. However, the DOL took the position that some of the employees' time in the training program was compensable under federal law. After numerous discussions, Dow has voluntarily reached an agreement with the DOL on this issue. While our company does not necessarily agree with the position taken by the DOL, we felt that it was in the best interests of all parties involved to reach an agreement as quickly as possible, in order to bring this matter to resolution.
>
> As of November 30, 2006, ratification of the mid-term agreement, there are no 2 level requirements or potential discipline related to the skills initiative. This means **[*10]** that there are no ongoing skills initiative activities that would be compensable under the DOL's position. Employees will continue

to be paid for certain assessment activities.

The payment you will receive is based on an assessment of the time that you spent on the compensable activities. Any questions related to this should be directed to Labor Relations.

(Docket Entry No. 33, Ex. A). Dow did not make payments to Maynor or expunge his disciplinary records because he had not signed a release and Dow could not verify whether he had taken any assessments or training. (*Id.*).

On November 30, 2006, Dow and the Union entered into a Mid-Term Agreement modifying Article XXXIV of the collective bargaining agreement. This modification eliminated the requirement of advancing two skill levels each year. The modification also eliminated disciplinary actions relating to the Site Foundational Skills Program. The Mid-Term Agreement eliminated the clause stating that "[f]ailure of the employee to attempt to reach these requirements could result in corrective disciplinary action, however employees clearly working toward achieving the skills but simply needing additional time in achieving required levels **[*11]** may be given additional time and opportunities to succeed," and the clause stating that "[o]nce the Skill Level has been determined, an employee will be expected to move up at least 2 Skill Levels per year until the employee has achieved the required level in all the Skill Categories." (Docket Entry No. 32, Ex. A-5). Under the Mid-Term Agreement, covered employees are still required to complete the Site Foundational Skills program if they want to bid into a new job. (*Id.*). Dow agreed to compensate covered employees for taking Skills Assessments.

Sixteen current or former employees have filed consents to participate in this litigation. One of those individuals, Eric Wells, has been on an unpaid leave of absence since November 1, 2003, and currently works for the Union. He has not taken a Foundational Skills Assessment since November 1, 2003. (Docket Entry No. 32, Ex. A at 5).

The issues raised by the pending motions are whether a collective action is properly certified and, if so, how the class should be defined and whether notice should issue.

## II. Conditional Certification

### A. The Legal Standard

*Section 207(a) of the FLSA* *HN1*[⬆] requires covered employers to compensate nonexempt employees at overtime **[*12]** rates for time worked in excess of statutorily defined maximum hours. *29 U.S.C. § 207(a)*. *Section 216(b)* *HN2*[⬆] creates a cause of action for employees against employers violating the overtime compensation requirements. *29 U.S.C. § 216(b)*. *Section 216(b)* provides:

> *HN3*[⬆] An action . . . may be maintained . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

*Id. Section 216(b)* *HN4*[⬆] establishes an opt-in scheme under which plaintiffs must affirmatively notify the court of their intention to become parties to the suit. *See Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1212 (5th Cir. 1995)*. District courts have discretion in deciding whether to order notice to potential plaintiffs. *See Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 170-171, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989)*; *Villatoro v. Kim Son Rest., L.P., 286 F. Supp. 2d 807, 808 (S.D. Tex. 2003)*.

*HN5*[⬆] Courts recognize two methods to determine whether to authorize notice to similarly situated employees advising them of their right to **[*13]** join an FLSA collective action. These methods are the two-step *Lusardi* approach and the class-action based *Shushan* approach. *See Lusardi v. Xerox Corp., 118 F.R.D. 351 (D.N.J. 1987)*; *Shushan v. Univ. of Colo. at Boulder, 132 F.R.D. 263 (D. Colo. 1990)*. In *Mooney v. Aramco Services Co., 54 F.3d 1207, 1216 (5th Cir. 1995)*, the Fifth Circuit found it unnecessary to determine which method is most appropriate. Most courts use the "two-step *ad hoc* approach" as the preferred method for the similarly-situated analysis rather than the *Rule 23* requirements. *See, e.g., Mielke v. Laidlaw Transit, Inc., 313 F. Supp. 2d 759, 762 (N.D. Ill. 2004)* (stating that most courts have employed or implicitly approved the two-step method); *Basco v. Wal-Mart Stores Inc., No. Civ.A. 00-3184, 2004 U.S. Dist. LEXIS 12441, 2004 WL 1497709, at *4 (E.D. La. July 2, 2004)*; *Villatoro v. Kim Son Restaurant, L.P., 286 F. Supp. 2d 807, 810 (S.D. Tex. 2003)*; *see also Grayson v. K Mart Corp., 79 F.3d 1086, 1096 n.12 (11th Cir. 1996)* (noting that "the requirements for pursuing a *§ 216(b)* class action are independent of, and unrelated to, the requirements for

class action under *Rule 23*"); *Lachapelle v. Owens-Illinois, Inc., 513 F.2d 286, 288 (5th Cir. 1975)* **[\*14]** (finding a fundamental difference between *Rule 23* class actions and FLSA collective actions).

*HN6*[↑] "*Lusardi* and its progeny are remarkable in that they do not set out a definition of 'similarly situated,' but rather they define the requirement by virtue of the factors considered in the [two-stage] analysis." *Mooney, 54 F.3d at 1213*. The first step of analysis is the "notice stage" in which the district court decides whether to issue notice to potential class members. *See id. at 1213-14*. The court's decision is often based only on the pleadings and affidavits that have been submitted. *Id.* "Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class" that provides potential class members with notice and the opportunity to opt-in. *Id. at 1214 n.8*. Even this lenient standard appears to require substantial allegations that potential members "were together the victims of a single decision, policy, or plan . . . ." *Id.* (citing *Sperling v. Hoffman-La Roche, Inc., 118 F.R.D. 392, 407 (D.N.J. 1988))*. A factual basis for the allegations is needed to satisfy this first step. *See Hall v. Burk, No. Civ. 301CV2487H, 2002 U.S. Dist. LEXIS 4163, 2002 WL 413901, at *3 (N.D. Tex. Mar. 11, 2002)* **[\*15]** (stating that "[u]nsupported assertions of widespread violations are not sufficient to meet Plaintiff's burden"); *see also Haynes v. Singer Co., 696 F.2d 884, 887 (11th Cir. 1983)*.

*HN7*[↑] At the first stage, there must be a showing of "some identifiable facts or legal nexus [that] bind the claims so that hearing the cases together promotes judicial efficiency." *Barron v. Henry County Sch. Sys., 242 F. Supp. 2d 1096, 1103 (M.D. Ala. 2003)* (citing *Sheffield v. Orius Corp., 211 F.R.D. 411, 416 (D. Or. 2002))*; *see also Basco, 2004 U.S. Dist. LEXIS 12441, 2004 WL 1497709, at *5* (quoting *Heagney v. European Am. Bank, 122 F.R.D. 125, 127 (E.D.N.Y. 1988)* (stating that certification is appropriate when some factual nexus binds the named plaintiffs and potential class members as victims of a particular alleged policy or practice)). "A court may deny plaintiffs' right to proceed collectively if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice." *England v. New Century Fin. Corp., 370 F. Supp. 2d 504, 507 (M.D. La. 2005)*; *see also Barron, 242 F. Supp. 2d at 1104* ("[T]he **[\*16]** mere fact that violations occurred cannot be enough to establish similarity, as that would not ultimately be sufficient to establish a pattern and practice without a showing that

the violations were more than sporadic occurrences.").

If a court conditionally certifies a class, the action proceeds as a collective action during discovery. *See Mooney, 54 F.3d at 1214*. *HN8*[↑] The second stage typically occurs when discovery is largely complete and the defendant moves to "decertify" the conditionally certified class. *See id.; Lusardi, 118 F.R.D. at 359*. At that point, the court makes a factual determination as to whether there are similarly situated employees. *Id.* If the district court finds that the claimants are similarly situated, the collective action may proceed. *See Mooney, 54 F.3d at 1214*; *Basco, 2004 U.S. Dist. LEXIS 12441, 2004 WL 1497709, at *3*. If the court decertifies the class, the opt-in plaintiffs are dismissed without prejudice and the original plaintiffs proceed on their individual claims. *England v. New Century Fin. Corp., 370 F. Supp. 2d 504, 508 (M.D. La. 2005)*.

Notice does not issue unless the court conditionally certifies the case as a collective action. *See, e.g., Jones v. Casey's General Stores, 517 F. Supp. 2d 1080, 1086 (S.D. Iowa 2007)* **[\*17]** ("Formal notice to putative collective members in an FLSA action is provided after conditional certification has been approved by the court."); *Dominquez v. Minn. Beef Indus., Inc., No. 06-1002 (RHK/AJB), 2007 U.S. Dist. LEXIS 61298, 2007 WL 2422837, at *2 (D. Minn. Aug. 21, 2007)* ("If the district court 'conditionally certifies' the class, putative class members are given notice and the opportunity to 'opt-in.'" (quoting *Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1218 (11th Cir. 2001))*.

This case is at the "notice stage" of the *Lusardi* analysis. Because the parties have presented minimal evidence, in the form of affidavits, the decision whether to issue notice to potential class members is "made using a fairly lenient standard." *Mooney, 54 F.3d at 1213*. *HN9*[↑] At this stage, a plaintiff must make a minimal showing that: (1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit. *See Prater v. Commerce Equities Mgmt Co., No. H-07-2349, 2007 U.S. Dist. LEXIS 85338, 2007 WL 4146714, at *4 (S.D. Tex. Nov. 19, 2007)*; *Simmons v. T-Mobile USA, Inc., No. H-06-1820, 2007 U.S. Dist. LEXIS 5002, 2007 WL 210008, at *5 (S.D. Tex. Jan. 24, 2007)*. **[\*18]** Some factual support for the complaint allegations of class-wide policy or practice must be shown to authorize notice. *See, e.g., Severtson v. Phillips Beverage Co., 137 F.R.D. 264, 266 (D. Minn.*

_1991)_ (allegations of plaintiff alone insufficient); _Felix de Asencio v. Tyson Foods Co., 130 F. Supp. 2d 660, 663 (E.D. Pa. 2001)_ (pleadings and four declarations from putative class members sufficient).

## B. Similarly Situated

Maynor asserts that certification is appropriate because he has shown that numerous other aggrieved individuals exist; those individuals are similarly situated because they were subject to a common employment policy that did not compensate for the training and testing under the Site Foundational Skills Assessment program; and that those individuals desire to opt in. (Docket Entry No. 16). Dow argues that the members of the proposed class are not similarly situated.

Dow acknowledges a common policy--the Site Foundational Skills Assessment program-- but asserts that individualized issues arise from the need to determine the effect of the DOL settlement payments on each class member's claim and the need to determine each employee's training time because the records are not **[*19]** a reliable source of that information. Dow also argues that Maynor is not similarly situated because he was the only Union member who failed to submit a release and that Wells, a consent plaintiff, is not similarly situated because since November 1, 2003 he has worked for the Union, not Dow.

Courts have stated that _HN10_[⬆] putative class members must show that they were affected by a common policy, plan, pattern, or practice to proceed collectively under _section 216(b) of the FLSA. See, e.g._, _O'Brien v. Ed Donnelly Enters., Inc., No. 2:04-CV-00085, 2006 U.S. Dist. LEXIS 86895, 2006 WL 3483956, at *3 (S.D. Ohio Nov. 30, 2006)_ (citations omitted) ("Plaintiffs must demonstrate that the Defendants had a common policy or plan in violation of the FLSA that negatively impacted the original and opt-in Plaintiffs."); _England v. New Century Fin. Corp., 370 F. Supp. 2d 504, 507 (M.D. La. 2005)_ (a court may refuse to allow plaintiffs to proceed collectively if the action arises from circumstances purely personal to the plaintiffs and not from any generally applicable rule, policy, or practice); _Gjurovich v. Emmanuel's Marketplace, Inc., 282 F. Supp. 2d 91, 95-97 (S.D.N.Y. 2003)_ (citations omitted) (a plaintiff must allege a common **[*20]** policy or plan and establish a sufficient factual nexus between his situation and the situation of the proposed classed members); _Bonilla v. Las Vegas Cigar Co., 61 F. Supp. 2d 1129, 1139 n.6 (D. Nev._

_1999)_ ("In order to be similarly situated, the action must not be distinct and specific to individual plaintiffs; rather, there must be some general policy or practice.").

_HN11_[⬆] "The court need not find uniformity in each and every aspect of employment to determine a class of employees are similarly situated." _Holbrook v. Smith & Hawken, Ltd., 246 F.R.D. 103, 106 (D. Conn. 2007)_; _see also Berger v. Cleveland Clinic Found., No. 1:05 CV 1508, 2007 U.S. Dist. LEXIS 76593, 2007 WL 2902907, at *20-21 (N.D. Ohio Sept. 29, 2007)_. A plaintiff need only demonstrate a reasonable basis for the allegation that a class of similarly situated persons exists. _Lima v. Int'l Catastrophe Solutions, Inc., 493 F. Supp. 2d 793, 798 (E.D. La. 2007)_. Courts have refused to permit FLSA suits to proceed as collective actions if the individualized inquiries required would eliminate "the economy of scale envisioned by the FLSA collective action procedure." _Holt v. Rite Aid Corp., 333 F. Supp. 2d 1265, 1275 (M.D. Ala. 2004)_; _see also Donihoo v. Dallas Airmotive, Inc., No. CIV.A.3:97-CV-0109-P, 1998 U.S. Dist. LEXIS 2318, 1998 WL 91256, at *1 (N.D. Tex. Feb. 23, 1998)_ **[*21]** ("[A]n inquiry into the employee's specific job duties . . . is not appropriate in a class lawsuit under _Section 216(b)_").

Most of the cases Dow cites to argue against certification are misclassification cases in which courts declined to certify proposed classes because individualized inquiries into employees' job duties would be required to determine whether the employers violated the FLSA. _See, e.g., Evancho v. Sanofi-Aventis U.S. Inc., No. 07-2266 (MLC), 2007 U.S. Dist. LEXIS 93215, 2007 WL 4546100, at *4 (D.N.J. Dec. 19, 2007)_ (holding that a proposed class in a misclassification suit was not similarly situated because of disparate job responsibilities and duties); _Tyler v. Payless Shoe Source, Inc., No. 2:05-CV-33F(WO), 2005 U.S. Dist. LEXIS 31682, 2005 WL 3133763, at *4-7 (M.D. Ala. Nov. 23, 2005)_ (same); _Holt, 333 F. Supp. 2d at 1275_ (same). Dow argues that these and similar cases provide the basis for denying certification in this case. In this case, however, there is no dispute as to the existence of a policy that applied to the proposed class. The putative class members were all subject to the Site Foundational Skills Assessment provision in **[*22]** Article XXXIV of the collective bargaining agreement. The alleged FLSA violations resulted from Dow's failure to compensate for time spent training for and taking Site Foundational Skills Assessments, required to avoid discipline. Whether employees were subject to the provision's requirements and what those requirements were does not depend on individual

circumstances such as job duties or supervisor.

Dow relies on *Dudley v. Texas Waste Systems, Inc., No. Civ. A.SA-05-CA-0078, 2005 U.S. Dist. LEXIS 9168, 2005 WL 1140605 (W.D. Tex. May 16, 2005)*, to argue that certification is inappropriate. In *Dudley,* the plaintiff sought to certify a class consisting of drivers who were not paid for lunch breaks even when the drivers worked through lunch. *2005 U.S. Dist. LEXIS 9168, [WL] at *1*. The defendant had a policy admonishing employees to take a half-hour lunch break. The employer deducted time for lunch breaks, reducing reported overtime hours by thirty minutes if the employee worked less than twelve hours in a day and by one hour if the employee worked twelve hours or more in a day. The defendant required the employees to inform management if they worked through their lunch period so they could be compensated for that time. *2005 U.S. Dist. LEXIS 9168, [WL] at *2*. The plaintiff **[*23]** alleged an FLSA violation because the employees rarely took lunch breaks. The court refused to certify the class at the first stage. The court found that the plaintiff had failed to demonstrate the existence of a similarly situated class of employees. The court explained that one reason for the ruling was that:

> [a]ny analysis of lunch breaks will result in this court and any jury hearing individual testimony regarding whether drivers regularly took lunch breaks, or only occasionally. If they did not take lunch breaks, the fact finder will need to hear the dates each driver actually worked through lunch and whether they needed to be compensated for an extra 30 minutes or one hour for the particular day. Further, the fact finder will need to hear whether any driver advised management that they worked through their break and required compensation.

*Id.*

The court also concluded that there was no evidence of a class-wide policy that violated the FLSA. The employer's written policy told employees that they should take their lunch breaks. It was undisputed that employees were told that if they worked over lunch, they should tell their managers so they could be compensated for the time worked. **[*24]** The court concluded that even under the lenient standard for conditional certification, the record did not support certification because there were only "unsupported assertions of improper lunch break adjustments." *Id.*

In *Dudley,* the court appeared to reason that whether the employer could be liable for violating the FLSA

depended on showings that individual employees had notified their managers that the employees had not taken their lunch breaks and the employer had nonetheless refused to pay for the time but instead continued to deduct it. Such showings would necessarily be individualized. In this case, by contrast, individualized determinations are not needed to determine whether Dow violated the FLSA by failing to compensate for the time required to train for and take the Foundational Skills Assessment tests. Dow's arguments focus on the need for individualized inquiries to determine the amounts of time for which compensation is due if a finding of liability results. Dow argues that because some employees already accepted payments from Dow's settlement with DOL, because the online training time records are unreliable, and because some employees did not spend any time training for **[*25]** the Foundational Skills Assessments, the factfinder would have to hear from over 956 potential opt-in plaintiffs and sort through numerous records to determine the amounts owed these plaintiffs. These arguments appear to relate to the potential damages owed to each class member, not to whether the proposed class members are similarly situated with respect to the employment policy alleged to violate the FLSA. Dow concedes "that all were subject to the Site Foundational Skills Program." (Docket Entry No. 32 at 14).

Most courts have held that *HN12*[⬆] in unpaid overtime "off-the-clock" cases, the need to determine class members' damages on an individualized basis should not bar conditional certification if the proposed class is otherwise similarly situated. *See, e.g., U.S. Dept. of Labor v. Cole Enters., 62 F.3d 775, 781 (6th Cir. 1995)* (affirming district court's entry of judgment in favor of Secretary of Labor in "off the clock" case and approving use of estimates in calculating back wages due); *Clarke v. Convergys Customer Mgmt. Group, Inc., 370 F. Supp. 2d 601, 606 (S.D. Tex. 2005)* (rejecting argument that the inherently individualized nature of damages in off-the-clock overtime claims make **[*26]** them unfit for collective treatment).

*HN13*[⬆] Courts use several mechanisms to handle damages determinations. One approach is to bifurcate cases into liability and damages phases. *See, e.g., Falcon v. Starbucks Corp., No. H-05-0792, 2008 U.S. Dist. LEXIS 3024, 2008 WL 155313, at *3 (S.D. Tex. Jan. 15, 2008)* (the plaintiffs alleged that they were not compensated for work performed off-the-clock; the court rejected the defendant's argument that the class should be decertified at the second stage because the

2008 U.S. Dist. LEXIS 42488, *26

damages would require individualized inquiry, noting that bifurcating the trial into liability and damages phases could address the case-management issues of individual damages determinations); *Thiebes v. Wal-Mart Store, Inc., No. Civ. 98-802-KI, 2004 U.S. Dist. LEXIS 15263, 2004 WL 1688544, at *1 (D. Or. July 26, 2004)* (the court bifurcated the liability and damages phase of a collective action suit involving 400 employees who alleged that they were required to work off-the-clock without pay; in the damages phase, individual plaintiffs submitted "claim forms" and 108 plaintiffs' claims went to the jury, with 27 testifying by deposition and the remainder in person, giving their recollection of the time they worked without compensation; the jury **[*27]** returned 108 verdict forms under which 83 plaintiffs received awards ranging from specific workweek-by-workweek findings of the hours worked off-the-clock to findings that some plaintiffs performed no off-the-clock work).

Courts also permit the use of representative testimony. *See, e.g., Schultz v. Capital Intern. §., Inc., 466 F.3d 298, 310 (4th Cir. 2006)*; *Grochowski v. Phoenix Constr., 318 F.3d 80, 88 (2d Cir. 2003)* ("[N]ot all employees need testify in order to prove FLSA violations or recoup back-wages"); *Reich v. Gateway Press, 13 F.3d 685, 701-02 (3d Cir. 1994)* ("Courts commonly allow representative employees to prove violations with respect to all employees."); *Brennan v. General Motors Acceptance Corp., 482 F.2d 825, 829 (5th Cir. 1973)* (allowing representative testimony in a case involving unpaid overtime); *Rodolico v. Unisys Corp., 199 F.R.D. 468, 484 (E.D.N.Y. 2001)* ("[S]tanding alone, the prospect of individual defenses should not defeat authorization of a collective action . . . ."); *Herman v. Hector I. Nieves Transport, Inc., 91 F. Supp. 2d 435, 446 (D.P.R. 2000)* ("It is well established that not all employees need testify in order to prove the violations or to recoup **[*28]** back wages").

In this case, the potential for individualized damages assessments is not a sufficient basis to refuse conditional certification and the issuance of notice to the proposed class. The amount of the offset that Dow would be entitled to claim based on the DOL settlement payment is established in the records. Dow has presented evidence of a flaw in the recording of online training time, but there is no evidence in the present record as to whether that flaw resulted in widespread irregularities similar to those relating to Maynor's records. The extent to which individualized inquiries will undermine the efficiencies of collective treatment depends heavily on the number of employees who opt

in. These concerns are more appropriately addressed at the second stage of the *Lusardi* analysis. *See Clarke, 370 F. Supp. 2d at 606-07* (citing *U.S. Dept. of Labor v. Cole Enters., 62 F.3d 775 (6th Cir. 1995)* (stating that **HN14**[↑] concerns about the inherently individualized nature of off-the-clock overtime cases "are of the sort that are appropriate for consideration during the second-stage analysis, and not during the initial 'notice' stage").

The facts that Maynor was the only employee fired for **[*29]** insubordination for refusing to submit a release and that Wells worked for the Union rather than Dow do not preclude a similarly-situated finding for a properly defined class. Dow appears to acknowledge that Wells was covered by the Foundational Skills provisions of the collective bargaining agreement. (Docket Entry No. 32, Ex. A at 5).

## C. The DOL Settlement and Waiver

Besides the offset effect of the payments resulting from the DOL-Dow settlement, Dow also argues that the putative class members are not similarly situated because some members waived their claims by accepting the payments. Maynor responds that acceptance of the payments may give rise to an offset of damages but does not waive the right to sue.

**HN15**[↑] Acceptance of a payment reached in a DOL settlement amounts to a waiver only if the employee agree to accept the payment the DOL determines to be due and it is "payment in full." *Sneed v. Sneed's Shipbuilding, Inc., 545 F.2d 537, 539 (5th Cir. 1977)*; *Solis v. Hotels.com Texas, Inc., No. Civ.A. 303CV0618L, 2004 U.S. Dist. LEXIS 17199, 2004 WL 1923754, *2 (N.D. Tex. Aug. 26, 2004)* ("Once an employee agrees to accept a payment of back wages supervised by the DOL and receives payment in full of those wages, the **[*30]** employee waives any right to bring a suit against his employer to recover unpaid wages under § 216(b).") (citations omitted). A settlement agreement has been "supervised" if the DOL "played a significant role" by investigating the claim, determining the amount owed, and sending out or approving a receipt stating that acceptance waives the right to sue. *See Niland v. Delta Recycling Corp., 377 F.3d 1244, 1247-48 (11th Cir. 2004)*; *Walton v. United Consumers Club, Inc., 786 F.2d 303, 306 (7th Cir. 1986)*; *Sneed, 545 F.2d at 538-39*. In *Walton v. United Consumers Club, Inc., 786 F.2d 305*, the Seventh Circuit explained how to distinguish settlements that give rise to a waiver of subsequent claims from those that do not:

2008 U.S. Dist. LEXIS 42488, *30

HN16[↑] The Department apparently distinguishes among settlements. When it thinks it has achieved "enough" for the employees-something close to full payment of the wages and overtime due-it sends them agreements explicitly releasing the right to sue, and it requests them to sign these forms if they wish to take the money. When the Department thinks it has fallen far short, it does not solicit these signatures. The Department's decision is the kind of supervision that § 16(c) contemplates. [*31] The idea is that federal supervision replaces private bargaining, and that the right to receive full statutory wages and overtime is not to be extinguished without the assent of both employee and Secretary. If the Secretary withholds assent, he declines to send out the form soliciting agreement.

786 F.2d at 306; see also Mion v. Aftermarket Tool & Equipment Group, 990 F. Supp. 535, 540 (W.D. Mich. 1997) (finding DOL approval when it investigated an employee's claim, exchanged a letter, a fax, a phone call, and another communication involving payroll expenses with the employer, determined the amount of back wages owed, and forwarded release forms to the employer to be signed by the employee); Cuevas v. Monroe Street City Club, 752 F. Supp. 1405, 1416 (N.D. Ill. 1990) (finding DOL approval when the DOL met with the employer, received employer correspondence, and supplied release forms). [2]

HN17[↑] "'[A]greement' is more than the acceptance of funds, as it must exist 'independent of payment.'" Dent v. Cox Commc'ns Las Vegas, Inc., 502 F.3d 1141, 1146 (9th Cir. 2007) (quoting Walton, 786 F.2d at 305-07). "Typically an employee manifests assent by signing a receipt (either the standard WH-58 or another form authorized by the DOL), which puts the employee on notice of the resulting waiver." Dent, 502 F.3d at 1147;

Sneed, 545 F.2d at 538 & n.3, 539-40. An employee may assent by cashing a check issued under a DOL-supervised settlement if a release was provided with the check, but merely cashing the check does not release the employee's claims absent a release. See Walton, 786 F.2d at 306-07 (holding that cashing a check issued [*33] under a DOL-supervised settlement did not release the employee's claims because the DOL did not send out a release form); Heavenridge v. Ace-Tex Corp., No. 92-75610, 1993 U.S. Dist. LEXIS 21129, 1993 WL 603201, at *3 (E.D. Mich. Sept. 3, 1993) (the fact that the DOL supplies waiver forms with the check, not the employee cashing the check, effectuates the waiver).

Based on the record, it does not appear that the payments to the Dow employees were made pursuant to a settlement agreement supervised by the DOL or that the employees executed valid waivers. The DOL investigated the complaint, found that the training and skills assessments were "mandatory" and that Dow was required to compensate employees for time spent training for and taking the Foundational Skills Assessments, and determined that Dow had underpaid $ 640,033.28 to 637 employees between July 1, 2005 and June 20, 2007. (Docket Entry No. 32, Ex. A at 4, Ex. D). Dow sent the explanatory letter to the employees. The letter stated that Dow and the DOL had "reached an agreement addressing compensability of time that some employees spent in this training." The letter did not state that accepting payment would waive the employees' right to bring an FLSA claim. [*34] (Docket Entry No. 33, Ex. A). The DOL did not send a receipt to employees stating that if they accepted the payment, they would waive the right to sue. There is no indication that the DOL approved the language in the letter that Dow sent to employees notifying them of the payments. See Niland, 377 F.3d at 1247-48; Walton, 786 F.2d at 306; Sneed, 545 F.2d at 538-39. The Union informed the employees that they were not waiving the right to sue by accepting the training and assessment money Dow paid. (Docket Entry No. 33, Ex. B).

Based on the present record, it does not appear that the putative class members waived their right to assert claims against Dow by accepting the payments. However, Dow would be entitled to an offset against any damages for the payments.

## D. The Class Definition

Maynor moves for conditional certification of a class of

---

[2] Dow cites Torreblanca v. Naas Foods, Inc., No. F 78-163, 1980 U.S. Dist. LEXIS 13893, 1980 WL 2100, at *2-3 (N.D. Ind. Feb.25, 1980), for the proposition that "[t]he mere fact that the putative class members may not have signed DOL authorized release documents is immaterial where the putative class members have accepted the benefit [*32] of Dow's bargain with the DOL -- their claims arising out of their participation in the Site Foundational Skills Program are nonetheless released." (Docket Entry No. 32 at 15). To the extent that Torreblanca held that an FLSA claim may be waived by the simple acceptance of a check, without any express warning that acceptance of the check constituted a waiver, that holding appears to have been overruled by the Seventh Circuit in Walton, 786 F.2d at 306-07.

2008 U.S. Dist. LEXIS 42488, *34

current and former members of the International Union of Operating Engineers Local No. 564 employed by Dow at its Freeport, Texas facility who were subject to the Skills Initiative training program during the three years before the complaint was filed in October 2007. (Docket Entry No. 16 at 10). The conditionally certified class is limited to employees **[*35]** who were required to meet the requirements of the Site Foundational Skills section of the collective bargaining agreement, Article XXXIV of the collective bargaining agreement. [3]

Because the Site Foundational Skills section is expressly limited to employees hired before May 14, 2003, any conditionally certified class must contain a similar restriction. *See Camper v. Home Quality Mgmt. Inc., 200 F.R.D. 516, 520-21 (D. Md. 2000)* (limiting class based on the evidence presented); *Tucker v. Labor Leasing, Inc., 872 F. Supp. 941, 949 (M.D. Fla. 1994)* (same). Dow argues that the putative class should be limited to covered employees who participated from October 9, 2004 to November 30, 2006, when the Site Foundational Skills program requirements were changed to remove the mandatory nature of the training and the assessments. The Mid-Term Agreement modifying Article XXXIV of the collective bargaining agreement, dated November 30, 2006, eliminated the requirement of advancing two skill levels each year and eliminated disciplinary actions relating to the Site Foundational Skills program. The Mid-Term **[*37]** Agreement eliminated the clause

stating that "[f]ailure of the employee to attempt to reach these requirements could result in corrective disciplinary action, however employees clearly working toward achieving the skills but simply needing additional time in achieving required levels may be given additional time and opportunities to succeed," and the clause stating that "[o]nce the Skill Level has been determined, an employee will be expected to move up at least 2 Skill Levels per year until the employee has achieved the required level in all the Skill Categories." (Docket Entry No. 32, Ex. A-5). Under the Mid-Term Agreement, covered employees are still required to complete the Site Foundational Skills program if they want to bid into a new job. (*Id.*). Dow agreed to compensate covered employees for taking Skills Assessments.

Maynor argues that as amended, the Site Foundational Skills section of the collective bargaining agreement still requires employees to take the assessments and to achieve certain results, although nothing is said about the length of time an employee has to achieve the required results and there is no disciplinary or other consequence of failure. Maynor argues that **[*38]** the amendments did not affect the mandatory nature of the program. (Docket Entry No. 33 at 10-11). But the evidence shows that since November 30, 2006, employees are paid for taking the assessments. Employees are not required to complete the Foundational Skills program unless they want to bid in to a job. Because the policy changed in critical respects in November 30, 2006, the class is properly limited to employees hired before May 13, 2003, covered by the collective bargaining agreement, at the Dow Freeport facility, who did not receive compensation for time spent training for and taking Skills Assessments between October 9, 2004 to November 30, 2006.

## E. Notice

Dow argues that this case is not appropriate for notice, even if conditional certification is granted. The fact that the Union was involved in the DOL settlement and may be publicizing the existence of this suit does not mean that notice is inappropriate. Dow has not made specific complaints about the contents of the proposed notice letter but asks the court to order the parties to confer on the notice and to set a time limit for the filing of consents. The parties are ordered to identify any disputes about the contents of **[*39]** the proposed notice letter by June 9, 2008, with a proposed schedule for the filing of consents.

---

[3] Maynor argues that "process operators" should be included in the conditionally certified class. (Docket Entry No. 33 at 11). The certified class does not exclude process operators who were covered by the collective bargaining agreement. The Foundational Skills Assessment program applied to all employees, including process operators. However, this suit does not address any FLSA violations stemming from the specific process operator testing requirements imposed by the Skills Initiative program. One of the seven Skills Initiative sections, "Section 2. Process Operator Skills," required all employees to achieve a score of 85% on a Process Operator Skills Assessment that tested specific subjects including mechanical equipment, electrical equipment, process equipment, process instrumentation, and pant operations, by the end of 2008. (Docket Entry No. 32, Ex. A-1). The causes of action asserted in this suit and the evidence presented relate solely to the application of the Site Foundational Skills Assessment program. **[*36]** Process operators who were required to undergo training and testing to comply with the Site Foundational Skills Assessment section are included in the class, but may not recover in this suit for time spent training and taking assessments for the Process Operator Skills program.

2008 U.S. Dist. LEXIS 42488, *39

**IV. Conclusion**

Maynor has satisfied the "fairly lenient standard" of the first stage of the _Lusardi_ analysis. Conditional certification is granted for a class defined as follows:

> Current and former members of the International Union of Operating Engineers Local No. 564 employed by Dow at the Dow facility in Freeport, Texas and hired before May 14, 2003 who were required to undergo training and testing in order to comply with the Site Foundational Skills section of the collective bargaining agreement between Dow and the Union between October 9, 2004 and November 30, 2006.

Notice will issue once the court has resolved any disputes the parties identify as to the contents. A hearing is set for **June 23, 2008 at 10:30 a.m.** to set a pretrial schedule.

SIGNED on May 28, 2008, at Houston, Texas.

/s/ Lee H. Rosenthal

Lee H. Rosenthal

United States District Judge

---

End of Document