# EXHIBIT 13

⚠ Caution
As of: June 6, 2018 10:42 PM Z

# [Argo v. Precision Drilling Co., LP](#)

United States District Court for the Southern District of Texas, Houston Division

December 23, 2015, Decided; December 23, 2015, Entered

CIVIL ACTION NO. 4:15-CV-00604

**Reporter**
2015 U.S. Dist. LEXIS 170949 *

BENJAMIN A. ARGO, On Behalf of Himself and All Others Similarly Situated, Plaintiff, v. PRECISION DRILLING COMPANY, LP, Defendant.

## Core Terms

notice, consent form, similarly situated, collection action, certification, rig, putative class member, overtime, days, mailing, calculating, floorhands, certify, e-mail

**Counsel:  [*1]** For Benjamin A Argo, Plaintiff: Melinda Arbuckle, Allen Ryan Vaught, Baron Budd PC, Dallas, TX.

For Precision Drilling Company, LP, Defendant: Michael Carter Crow, LEAD ATTORNEY, Kimberly Frances Cheeseman, Norton Rose Fulbright US LLP, Houston, TX.

**Judges:** Stephen W. Smith, United States Magistrate Judge.

**Opinion by:** Stephen W. Smith

## Opinion

### MEMORANDUM AND ORDER

Before the Court is Plaintiff Benjamin Argo's motion to conditionally certify a collective action and to issue notice under the Fair Labor Standards Act (FLSA). Dkt. 19. After reviewing the briefing and the law, the Court grants the motion.

### BACKGROUND

Defendant Precision employed Argo as a floorhand on one of its oil rigs. Argo complains that Precision, in making overtime payments to Argo and other oilfield workers, purposefully omitted two forms of payment from its overtime calculations: (1) oil-based mud (OBM) pay, and (2) safety bonuses. Argo seeks to conditionally certify a nationwide collective action on behalf of all hourly paid Precision rig crew workers who received OBM or safety pay within the time limits of the FLSA.[1]

### ANALYSIS

The FLSA permits an employee to bring suit "for and in behalf of himself . . . and other employees similarly situated." *29 U.S.C. § 216(b)*. Unlike a class action under *Federal Rule of Civil Procedure 23*, potential plaintiffs in a FLSA collective action must opt in to the lawsuit. [Dreyer v. Baker Hughes Oilfield Operations, No. H-08-1212, 2008 U.S. Dist. LEXIS 101297, 2008 WL 5204149, at *1 (S.D. Tex. Dec. 11, 2008)](#). The court may allow the named plaintiff to send an opt-in notice to other potential plaintiffs once the court has conditionally certified the collective action. *See* [Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165, 169-70, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989)](#).

The FLSA does not define "similarly situated," and the Fifth Circuit has yet to rule on the exact method that district courts should use to determine whether plaintiffs are "similarly situated" under the FLSA. *See* [Acevedo v. Allsup's Convenience Stores, Inc., 600 F.3d 516, 518-19 (5th Cir. 2010)](#). The courts of the Southern District of Texas generally follow a two-stage certification approach first set forth in [Lusardi v. Xerox Corp., 118 F.R.D. 351 (D.N.J. 1987)](#). *See* [Kemp v. Databank IMX, LLC, No. H-14-1090, 2015 U.S. Dist. LEXIS 54619,](#)

---

[1] In its response, Precision contends that the proposed class is overly broad as described in Argo's first proposed order. Dkt. 22 at 8 **[*2]** n.1. Argo submits a revised proposed order certifying a class of "all hourly paid rig crew workers," which he defines in his reply as all floorhands, motormen, derrickhands, and drillers. Dkt. 23 at 2 n.1.

*2015 WL 1897929, at \*4 (S.D. Tex. Mar. 27, 2015)*.

This case is currently at the first stage of the *Lusardi* certification process. At this notice stage, "the court determines whether the putative class members' claims are sufficiently similar to merit sending **[\*3]** notice of the action to possible members of the class." *Acevedo, 600 F.3d at 519*. The court is fairly lenient when deciding whether to conditionally certify a class at this stage, requiring the plaintiffs to show: (1) a reasonable basis for crediting the assertion that aggrieved individuals exist, and (2) that the aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted. *See Jones v. Cretic Energy Servs., LLC, No. H-15-0051, 2015 U.S. Dist. LEXIS 164786, 2015 WL 8489978, at \*4 (S.D. Tex. Dec. 9, 2015)*. Some courts also require the plaintiffs to demonstrate that other individuals are interested in opting in to the lawsuit. *See Simmons v. T-Mobile USA, Inc., No. H-06-1820, 2007 U.S. Dist. LEXIS 5002, 2007 WL 210008, at \*9 (S.D. Tex. Jan. 24, 2007)* (collecting cases). This Court has rejected that requirement because it is "at odds with the Supreme Court's command that the FLSA be liberally construed to effect its purposes." *Dreyer, 2008 U.S. Dist. LEXIS 101297, 2008 WL 5204149, at \*3*.

At the decertification stage, which occurs after notice has been sent to the conditionally certified class, the court makes a final determination as to whether the representative and opt-in plaintiffs are "similarly situated" enough to proceed with a collective action. *Id.* At this postdiscovery stage, the court has far more information before it and is better able to determine whether the plaintiffs are similarly situated **[\*4]** enough to proceed as a collective action. *Id.*

In support of conditional certification, Argo submits his own declaration (Dkt. 19-4) as well as a declaration by one opt-in plaintiff, Curtis Mosby (Dkt. 20-1). Argo states that he worked as a floorhand on Rig 96 in Williston, North Dakota, from August 2014 to January 2015. Dkt. 19-4, PP 3-4. Mosby states that he worked as a derrickhand and motorman on Rigs 702 and 441 in Odessa, Texas, from June to December 2014. Dkt. 20-1, PP 1, 3, 8. Both plaintiffs claim that they were underpaid due to Precision's failure to include OBM and safety pay in its overtime calculations (Dkt. 19-4, P 8; Dkt. 20-1, P 11), and both submit earnings statements demonstrating that OBM and safety payments were not factored into their overtime rate of pay (Dkt. 19-4 at 7-14; Dkt. 20-1 at 55-64). Finally, both plaintiffs declare that they spoke with other drillers, derrickhands,

motormen, and floorhands assigned to their rigs and confirmed that Precision applied a similar overtime policy when calculating their pay. Dkt. 19-4, P 12; Dkt. 20-1, P 12. The plaintiffs have satisfied the lenient standard applied at this initial stage in the certification process.

Precision **[\*5]** dedicates much of its response to attacking the merits of the plaintiffs' claims, arguing that OBM pay is intended to be an expense reimbursement for the cost of replacing workers' clothing, not hazard pay for working in a dirtier, more dangerous environment. *See* Dkt. 22 at 11. Precision also attacks the credibility of the declarations submitted by Argo and Mosby, arguing that the plaintiffs fail to explain how they came to the conclusion that safety bonuses were paid to incentivize safe work habits. *See id.* at 12. These arguments are premature, however, because "[n]either stage of certification is an opportunity for the court to assess the merits of the claim by deciding factual disputes or making credibility determinations." *McKnight v. D. Houston, Inc., 756 F. Supp. 2d 794, 802 (S.D. Tex. 2010)*.

Precision next argues that conditional certification should be denied because the plaintiffs fail to show a common policy, plan, or practice and fail to show that the same policy applied across company locations. Dkt. 22 at 17-19. In 1995, the Fifth Circuit observed that, at the notice stage, courts have required "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1214 n.8 (5th Cir. 1995)*. In *Dreyer*, this Court **[\*6]** recognized that a showing of a single policy or plan strongly supports a finding that the plaintiffs are similarly situated, but refused to require plaintiffs to prove a single policy or plan before granting conditional certification. *2008 U.S. Dist. LEXIS 101297, 2008 WL 5204149, at \*3*. That said, the plaintiffs have substantially alleged a single policy of omitting OBM and safety pay from the regular rate of pay when calculating overtime that applies to all Precision rig workers. As Argo correctly argues in his reply, Precision's position is that it properly excluded OBM and safety bonus payments from the regular rate calculation under the FLSA, not that it applied different payment policies varying by location or job title. Precision asserts that not all employees were eligible to receive OBM and safety pay, *see* Dkt. 22-4, P 5, but does not produce any evidence to refute Argo's allegation that he and other rig workers across the country who did receive such payments are victims of a single, uniform policy of

2015 U.S. Dist. LEXIS 170949, *6

improper exclusions. The Court finds that Argo has shown that aggrieved individuals are similarly situated in relevant respects and that conditional certification of the collective action is warranted.

CONCLUSION

The Court grants **[\*7]** the motion to conditionally certify a collective action (Dkt. 19). The Court approves the notice marked as Exhibit G (Dkt. 23-3), and the plaintiffs may send it to all hourly paid floorhands, motormen, derrickhands, and drillers who received OBM pay, safety bonuses, or both, up to three years before the date of this order. The Court also approves the consent form marked as Exhibit A (Dkt. 19-1), but orders plaintiffs to include the following language in the consent form: "By opting in to this suit, I consent to magistrate judge jurisdiction under *28 U.S.C. § 636(c)*."

The Court overrules Precision's objection to Argo's use of electronic notices and approves the following notice schedule:

⊞*Go to table1*

Within 24 hours of mailing the notices, counsel shall file a notice with the Court advising of the date of mailing. Each envelope containing the notice and consent form must state, on the outside, in regular or bold typeface: "**Notice of Unpaid Overtime Lawsuit — Deadline to Join**." Each e-mail containing the notice and consent form must also make this statement in the subject line.

Precision is ordered to provide the last four digits **[\*9]** of the Social Security number of each putative class member whose notice is returned undeliverable. Precision must provide this information within 24 hours of being notified by counsel that the mail was returned undeliverable.

Signed at Houston, Texas, on December 23, 2015.

/s/ Stephen W. Smith

Stephen W. Smith

United          States          Magistrate          Judge

Clayton Craighead

**Table1 (***Return to related document text***)**

| DEADLINE | ORDER |
| --- | --- |
| 14 days from this order | Precision must take reasonable steps to obtain and produce the full names, last known street addresses, last known phone numbers, last known e-mail addresses, and dates of employment of the putative class members. This information shall be produced in usable electronic format. |
| 20 days from receipt of putative class member information from Precision | Plaintiff's counsel must send copies of the notice and consent form to the putative class members by mail and/or e-mail. Precision is ordered to post a **[*8]** copy of the notice and consent form in an open and obvious location at all jobsites for 90 days. |
| 90 days from date notice is mailedto potential class members | The putative class members have 90 days to return their signed consent form for filing with the Court. The 90-day period begins three days after mailing or e-mailing of the notice, whichever occurs first. Notice is timely received if postmarked no later than the end of that 90-day notice period. Counsel must promptly file the consent. Precision may remove the posted notice and consent form after the 90-day period expires. |
| 60 days from date notice is mailed | Plaintiff's counsel may send a postcard reminder to the putative class members and e-mail an identical copy of the notice and consent form to the putative class members. |

**Table1 (***Return to related document text***)**

---

**End of Document**

Clayton Craighead