# EXHIBIT 17

✚ Positive
As of: June 6, 2018 10:46 PM Z

# *Davis v. Mostyn Law Firm, P.C.*

United States District Court for the Southern District of Texas, Houston Division

January 19, 2012, Decided; January 19, 2012, Filed

Civ. Action No. 4:11-cv-02874

**Reporter**

2012 U.S. Dist. LEXIS 6014 *; 2012 WL 163941

SHERRI L. DAVIS, Individually and on Behalf of All Other Similarly Situated, Plaintiffs, v. THE MOSTYN LAW FIRM, P.C., Defendant.

## Core Terms

paralegals, similarly situated, employees, notice, duties, salaried, exempt, overtime, Plaintiffs', lawsuit, reasonable basis, declarations, offices, join, legal assistant, job duties, certification, individuals, class member, discovery, aggrieved individual, collection action, forty hour, requirements, explains, courts, opt-in, overtime pay, responsibilities, allegations

## Case Summary

### Overview

In this FLSA action, plaintiffs' motion for expedited class notice was granted because plaintiffs sufficiently alleged that they were subject to the same company-wide policy as other salaried paralegals and plaintiffs sufficiently alleged that they were subject to the same company-wide policy as other salaried paralegals.

### Outcome

Plaintiffs' motion granted.

## LexisNexis® Headnotes

Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions

*HN1*[⬇] Remedies, Class Actions

Under § 207(a) of the Fair Labor Standards Act, covered employers are required to compensate

nonexempt employees at overtime rates for time worked in excess of statutorily-defined maximum hours. *29 U.S.C.S. § 216(b)* provides a right of action for employees against employers who violate § 207. Similarly situated employees can "opt-in" to a lawsuit under § 207(a) to benefit from a judgment. Courts recognize two methods for determining whether to authorize notice to similarly-situated employees: the spurious class action Shushan approach, or the two-step Lusardi approach. The Fifth Circuit has not determined which method is more appropriate, but most courts use the Lusardi approach.

Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions

*HN2*[⬇] Remedies, Class Actions

In the context of the Fair Labor Standards Act, under the first step of the Lusardi analysis, courts decide whether to issue notice to potential class members. As the court's decision is usually based only on the pleadings and affidavits, the standard is lenient and typically results in conditional certification. Indeed, as discovery usually has not been conducted at this stage, courts do not review the underlying merits of the action in determining whether to conditionally certify. Some courts place an emphasis on finding some identifiable facts or legal nexus that binds the claims so that hearing the cases together promotes judicial efficiency. Indeed, a court may deny plaintiffs' right to proceed collectively if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice. Specifically, the first-stage test requires a minimal showing by the plaintiff that (1) there is a reasonable basis for crediting the assertions that aggrieved individuals exist, (2) that those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted, and (3) that those individuals want to opt-in to

the lawsuit. Some factual support for the complaint allegations of class-wide policy or practice must be shown to authorize notice.

Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions

*HN3*[↓]  **Remedies, Class Actions**

In the context of the Fair Labor Standards Act, once a court conditionally certifies a class, the action proceeds as a collective action during discovery. At the second stage of the analysis, the defendant moves to "decertify" the conditionally-certified class. The court then must make a factual determination as to whether the employees are similarly situated; if it so finds, the collective action may proceed. Alternatively, if the court finds that the employees are not similarly situated, the opt-in plaintiffs are dismissed without prejudice and the original plaintiffs proceed with their individual claims.

Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions

*HN4*[↓]  **Remedies, Class Actions**

In the context of the Fair Labor Standards Act (FLSA), plaintiffs must provide the court with some evidence (a reasonable basis) showing that the defendants subjected a group of similarly situated potential class members to a single decision, policy, or plan' violating the provisions of the FLSA. A finding of similarly situated employees does not require a showing of identical duties and working conditions across the entire group. However, it does require a minimal showing that all members of the class are similarly situated in terms of job requirements and payment practice. Although this showing is not stringent, it requires more than unsupported and generalized allegations. Furthermore, employees with the same job title are not similarly situated for the purposes of an "opt-in" FLSA class if their day-to-day job duties vary substantially. Courts have found, however, that putative class members are similarly situated if they have only superficially different job titles or slightly different job duties.

Civil Procedure > Parties > Joinder of Parties > Permissive Joinder

Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions

Civil Procedure > Trials > Separate Trials

*HN5*[↓]  **Joinder of Parties, Permissive Joinder**

Many courts have stated that putative class members must show that they were affected by a common policy, plan, pattern, or practice to satisfy the similarly situated inquiry. However, other courts have stated that a common policy is not necessarily required and uniformity is clearly not necessary. Rather, the similarly situated requirement of *29 U.S.C.S. § 216(b)* is more elastic and less stringent than the requirements found in *Fed. R. Civ. P. 20* (joinder) and *Fed. R. Civ. P. 42* (severance), so a unified policy, plan, or scheme of discrimination may not be required to satisfy *29 U.S.C.S. § 216(b)*.

Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions

*HN6*[↓]  **Remedies, Class Actions**

In the context of the Fair Labor Standards Act, many courts have issued class notice at the first Lusardi stage even when the alleged policy is a classification of exempt.

Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions

*HN7*[↓]  **Remedies, Class Actions**

In the context of the Fair Labor Standards Act, plaintiffs must also offer evidence that others seek to join the lawsuit. Reliance on the plaintiff's own allegations that the putative class members exist and together were the victims of a single decision, policy, or plan is insufficient to meet the burden of showing that the additional aggrieved persons exist and want to join the lawsuit.

Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions

*HN8*[↓]  **Remedies, Class Actions**

In the context of the Fair Labor Standards Act, the

participation of additional plaintiffs in a lawsuit after the initial plaintiff is relevant in determining whether there is a reasonable basis to assume that similarly situated individuals would seek to join the lawsuit.

Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions

*HN9*[ ] **Remedies, Class Actions**

The well-established precedent of the Southern District of Texas indicates that, where a plaintiff alleges a willful Fair Labor Standards Act (FLSA) violation, notice is proper for potential class members employed by the defendant within the full three-year period; FLSA plaintiffs are not required to prove willfulness without the benefit of discovery.

**Counsel: [*1]** For Sherri L. Davis, Individually and on Behalf of All Others Similarly Situated, Nita Dryden, Plaintiffs: Alex Mabry, The Mabry Law Firm, PLLC, Houston, TX.

For The Mostyn Law Firm PC, Defendant: William R. Stukenberg, LEAD ATTORNEY, Meyer White LLC, Houston, TX.

**Judges:** KEITH P. ELLISON, UNITED STATES DISTRICT COURT JUDGE.

**Opinion by:** KEITH P. ELLISON

# Opinion

### MEMORANDUM AND ORDER

Before the Court is Plaintiffs' Motion for Expedited Class Notice and for Limited Discovery ("Motion"). (Doc. No. 10.) After considering the Motion, all responses and replies thereto, and the applicable law, the Court determines that the Motion must be **GRANTED.**

### I. BACKGROUND

Plaintiffs Sherri L. Davis ("Davis") and Carlos Alvarado ("Alvarado") (collectively, "Plaintiffs") filed this lawsuit against The Mostyn Law Firm, P.C. ("Mostyn" or "Defendant") alleging violations of the Fair Labor Standards Act ("FLSA"). Specifically, Plaintiffs allege

that Mostyn failed to pay them overtime compensation when they worked more than forty hours per week, as required by the FLSA. (Mot. Not. 1.) According to Plaintiffs, they were employees, rather than independent contractors, of Mostyn; were not exempt from FLSA's requirements under any FLSA exemption; **[*2]** worked substantial overtime hours; and were not paid for their overtime hours. (*Id.*) Now, Plaintiffs seek to notify remaining current and former similarly situated employees of their right to recover the unpaid overtime by joining the present lawsuit.

Plaintiffs explain that they are former employees of Mostyn who performed legal assistant services on a daily basis and did not qualify under any exemptions to the FLSA. (*Id.* 2.) Plaintiffs insist that they and their paralegal co-workers "performed the same or similar job function and had the same type of responsibilities with respect to their legal assistant duties." (*Id.*) According to Plaintiffs, their proposed collective action "does not turn on individual facts related to an exemption defense," and "focuses on a clearly defined, cohesive group of employees who worked for Mostyn and who were subjected to the same payroll practices." (*Id.*) Therefore, Plaintiffs request that notice be sent to "all paralegals/legal assistants who worked for Defendant at any time during the period from August 3, 2008 through the present." (*Id.* 3.) In addition to requesting expedited class notice, Plaintiffs ask that Mostyn be ordered to produce the last **[*3]** known addresses, all phone numbers, dates of birth, and social security numbers for all of its legal assistants employed within the three years preceding the filing of this action. (*Id.* 11-13.)

Plaintiffs present two affidavits to support the issuance of class notice. Davis declares that she was employed as a paralegal with Mostyn from June 2007 until February 2009. (Doc. No. 10-1, Sherri L. Davis Decl. ¶ 2-3.) In that capacity, she "performed clerical duties that included typing, filing, and copying and other general work associated with the representation of the firm's clients." (*Id.*) Davis insists that her "duties were typical of those performed by my paralegal colleagues at the firm." (*Id.*) Furthermore, Davis explains that she typically worked more than seventy hours a week, despite the fact that she was only scheduled to work from 8:30 a.m. to 5:30 p.m. on Mondays through Fridays. (*Id.* ¶ 4.) Despite her overtime work, Davis claims, she was never compensated for more than forty hours of work per week. (*Id.*) According to Davis, dozens of salaried paralegals worked more than forty hours per week and were denied overtime pay; she lists four of those paralegals by name. (*Id.* ¶ 5.)

Alvarado **[*4]** was similarly employed by Mostyn as a paralegal from July 2009 to June 2010. (Doc. No. 10-2, Carlos Alvarado Decl. ¶ 2-3.) As a paralegal, Alvarado "performed clerical duties that included typing, filing, and copying and other general work associated with the representation of the firm's clients." (*Id.* ¶ 2.) According to Alvarado, his "duties were typical of those performed" by his paralegal colleagues at the firm. (*Id.*) Although Alvarado was only scheduled to work forty hours a week, he claims he actually worked in excess of fifty hours a week. (*Id.* ¶ 4.) Alvarado avers that he was not compensated for his overtime hours. (*Id.*) Additionally, Alvarado explains that the majority of the dozens of paralegals he worked with worked in excess of forty hours a week and were not paid overtime. (*Id.* ¶ 6.)

The Court permitted Mostyn to conduct limited discovery before filing its Response. In its Response, Mostyn argues that Plaintiffs have not met their burden to establish that they are similarly situated to other paralegals, as neither had worked for Mostyn in the past 17 months and had no knowledge of Mostyn's operations since their departure. (Doc. No. 23, Resp. Mot. Not. 1.) Furthermore, Mostyn **[*5]** contends, Plaintiffs merely offer conclusory and virtually identical two-page declarations, which contain only one sentence regarding their job duties. (*Id.*) In fact, one of the Plaintiffs, Alvarado, admitted that his declaration does not exhaustively describe his job duties. (*Id.*; Alvarado Dep. 121:7-122:10.) More importantly, Mostyn employs three types of paralegals— Supervisor Paralegals, Lead Paralegals, and Docket Paralegals—with widely diverging job duties. (*Id.* 2; Ex. 1 to Resp. to Mot. Not., Vivian Anderson Decl. ¶¶ 4-31.) According to Anderson, Lead Paralegals oversee the paralegal and administrative functions of each docket, assign projects, correct errors, conduct interviews, provide coaching and training, provide input on performance and bonuses, and discipline direct reports. (*Id.* ¶¶ 12-17.) Anderson states that Docket Paralegals ensure the proper functioning of the docket by communicating with clients, opposing counsel, and the court regarding significant matters; drafting discovery and other pleadings; performing legal research; overseeing discovery and document production; and assembling material for hearings, mediations, depositions, and trials. (*Id.* ¶ 18.) Anderson **[*6]** explains that the amount of time Docket Paralegals spend on a given activity varies greatly. (*Id.* ¶ 19.) Docket Paralegals apparently report to the Lead Paralegal, who in turn reports to the Lead Docket Attorney and the Supervisor Paralegal. (*Id.* ¶¶ 12, 20.) The Supervisor Paralegal, Anderson states, is a Lead Paralegal for one of the dockets; however, the Supervisor Paralegal has additional supervisory responsibilities. (*Id.* ¶ 21.) As Anderson explains, compensation and hours worked vary significantly among Supervisor Paralegals, Lead Paralegals, and Docket Paralegals, with some being paid on a salary basis and others paid on an hourly basis and receiving overtime. (*Id.* ¶ 25.)

According to Anderson, paralegals' duties also vary based on their office location, as Mostyn's Houston Wescott, Houston West Alabama, Galveston, Beaumont, and Austin offices operate largely independently, and paralegals' duties further differ depending on their assigned dockets and their supervisors. (*Id.* ¶ 3-5.) Specifically, "no two dockets are the same and there is substantial variation in terms of the work duties, job tasks, work hours, reporting structure, and responsibilities between the dockets depending **[*7]** on the type and number of cases comprising the docket as well as who else is assigned to that particular docket." (Resp. to Mot. Not. 4-5.) Indeed, paralegals are not even primarily responsible for the tasks outlined in the declarations offered by Plaintiffs—namely, copying, filing, typing, answering phones, and similar tasks. (*Id.* 5; Anderson Decl. ¶ 30.)

Mostyn also observes that at least five different exemptions to the FLSA may apply to any given paralegal. (Resp. to Mot. Not. 15-16.) As a result, evidence in a collective action would require "a jury [to] resolve a multitude of individualized inquiries regarding who was exempt during what time periods under at least five exemptions, how many hours were worked by each class member in every week during a three year period, and what each class member's damages should be." (*Id.*) Furthermore, Mostyn avers, Plaintiffs "admit that the only decision, policy, or plan to which they were purportedly subjected was their classification as exempt, and settled law provides that mere classification as exempt is insufficient to carry their burden." (*Id.* 1, 19.) Moreover, Mostyn insists, Plaintiffs fail to assert that other members of the **[*8]** putative class desire to opt-in to the case, as is required under the standard. (*Id.*) Finally, Mostyn explains that Plaintiffs seek to include, within their class, both exempt salaried employees, as well as non-exempt hourly workers. (*Id.* 18.) As Plaintiffs' claim is that they and similarly situated paralegals were misclassified as exempt and paid a salary, but not paid overtime, Mostyn explains, they cannot support a class that includes individuals classified as non-exempt, paid on an hourly basis, and paid overtime. (*Id.* 18-19.) For these reasons, Mostyn insists, Plaintiffs' Motion should be denied.

In their Reply, Plaintiffs first argue that Anderson's description of segregated paralegal duties is inaccurate and also immaterial, as Mostyn's segregation is a recent phenomenon, and in any event does not change the fundamentally similar and non-exempt character of the salaried paralegals' work. (Doc. No. 25, Reply to Mot. Not. 2.) Indeed, Plaintiffs contend, "[t]he fact that Defendant dealt with an expanding hurricane docket by distributing some paralegal duties to newly created departments or to newly created paralegal and legal assistant positions does not change the non-exempt character **[*9]** of the work performed or the fact that the paralegals in the class were similarly situated." (*Id.* 6.) Furthermore, Plaintiffs point out, the United States Department of Labor ("DOL") has issued opinion letters stating that paralegals and legal assistants generally do not qualify under certain exemptions—contravening Mostyn's allegation that up to five exemptions may apply. (*Id.* 6-7; Ex. D & E to Reply to Resp. to Mot. Dismiss, "Opinion Letter, U.S. Department of Labor, Dec. 16, 2006," and "Opinion Letter, U.S. Department of Labor, July 24, 2006.")

Second, Plaintiffs assert, the existence of the class is not precluded by the existence of individuals not in the class. (*Id.* 2) Plaintiffs explain that Mostyn "began with a class of salaried paralegals who did not receive overtime and maintained that class even as [Mostyn] brought its pay practices in line with the requirements of the FLSA with respect to some new hires." (*Id.* 8.) Plaintiffs insist that "[t]he fact that [Mostyn] created a new subset of hourly-paid paralegal employees does not obviate the existence of its older class of salaried paralegal employees who continued to be subject to a common policy and practice of not being paid **[*10]** overtime." (*Id.*) Third, according to the Plaintiffs, conditional certification does not turn on individualized damages, and Mostyn provides no evidence to prove that the size of the class would be unmanageable. (*Id.* 2.) Specifically, Plaintiffs cite *Maynor v. Dow Chem. Co., No. G-07-0504, 2008 U.S. Dist. LEXIS 42488, 2008 WL 2220394, at *8 (S.D. Tex. May 28, 2008)*, for the proposition that the existence of unique damages questions does not defeat class notice. (*Id.* 8.)

Fourth, Plaintiffs insist that they have met the three-part test for conditional certification, which merely requires that they show (1) a reasonable basis for the assertion that aggrieved individuals exist; (2) the aggrieved individuals are similarly situated to Plaintiffs; and (3) the aggrieved individuals want to opt in to the lawsuit. (*Id.* 3, 9.) Plaintiffs claim that they meet the first requirement because they identified individuals who were members

of the class. (*Id.*) With respect to the second element, Plaintiffs state that they have shown that proposed class members had similar tasks. (*Id.*) Furthermore, Plaintiffs insist that they have presented evidence that, although the Plaintiffs only worked in the two Houston offices, they had personal **[*11]** knowledge of their colleagues' activities and pay structure in the other offices. (*Id.* 9-10.) In contrast, they contend, Mostyn has provided no evidence to suggest that paralegal duties or compensation practices in the other Texas offices differed from the Houston offices. (*Id.* 10.) As to the third prong, Plaintiffs aver that the presence of Carlos Alvarado and Nita Dryden in the suit is evidence of potential class members who wish to join the suit, as they both chose to opt-in after Davis filed the Original Complaint. (*Id.* 4.) Moreover, Plaintiffs remind the Court that they had identified additional colleagues who expressed dissatisfaction with the lack of overtime pay, and insist that it is reasonable to infer that those additional members would be interested in joining the suit. (*Id.*)

Plaintiffs also include a declaration from a former paralegal, Nita Dryden ("Dryden"). Dryden, who was employed by Mostyn from February 2009 until February 2010, recently joined the lawsuit. (Ex. 1 to Reply to Mot. Not., Nita Dryden Decl. ¶ 2.) Dryden had worked in Mostyn's two Houston law offices, along with several paralegals who were paid on a salary basis and did not receive overtime pay. (*Id.*) **[*12]** Dryden states that paralegals had no assistants, and did their own copying, typing, and work on discovery and mediation notebooks, as well as received telephone calls from clients throughout the day. (*Id.* ¶¶ 2-3.) According to Dryden, she and her colleagues performed the same type of work, and she typically worked more than forty hours a week. (*Id.* ¶ 4.) However, Dryden was not compensated for this additional time. (*Id.*) Although Dryden explains that most of her contacts were with paralegal colleagues in the Houston offices, she spoke by telephone on occasion with Mostyn's paralegals in other offices, such as at the Beaumont office. (*Id.* ¶ 5.) From her phone conversations as well as in-person meetings with paralegals from other offices, Dryden deduced that they performed the same work she did. (*Id.*)

Drydan also insists that Anderson's declaration is inaccurate for several reasons. Specifically, Anderson was not hired until 2009, and so has no personal knowledge of how Mostyn operated prior to her arrival. (*Id.* ¶ 11.) Furthermore, Dryden contends, the structure and operation of the law firm Anderson describes may accurately reflect how the firm is operated today, but

does not describe **[\*13]** the structure and operation while Dryden was employed there, when there were no Supervisor Paralegals or Lead Paralegals, paralegals were not involved in interviews or hiring, and all paralegals were responsible for copying, filing, typing, and speaking with clients by telephone on a daily basis. (*Id.*)

## II. LEGAL STANDARD

_HN1_[↑] Under _§ 207(a) of the FLSA_, covered employers are required to compensate nonexempt employees at overtime rates for time worked in excess of statutorily-defined maximum hours. *Section 216(b)* provides a right of action for employees against employers who violate _§ 207_. Similarly situated employees can "opt-in" to a lawsuit under _§ 207(a)_ to benefit from a judgment. _Holbrook v. Smith & Hawken, Ltd., 246 F.R.D. 103, 105 (D. Conn. 2007)_. Courts recognize two methods for determining whether to authorize notice to similarly-situated employees: the spurious class action _Shushan_ approach, or the two-step _Lusardi_ approach. _Aguirre v. SBC Communs., Inc., No. H-05-3198, 2006 U.S. Dist. LEXIS 22211, at \*14 (S.D. Tex. April 11, 2006)_ (citing _Shushan v. Univ. of Colo. at Boulder, 132 F.R.D. 263 (D. Colo. 1990)_; _Lusardi v. Xerox Corp., 118 F.R.D. 351 (D.N.J. 1987)_). The Fifth **[\*14]** Circuit has not determined which method is more appropriate, _Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1216 (5th Cir. 1995)_, but most courts use the _Lusardi_ approach, including this one, _Aguirre, 2006 U.S. Dist. LEXIS 22211, at \*14_. *See also* _Detho v. Asia Bilal, No. H-07-2160, 2008 U.S. Dist. LEXIS 29502, at \*5 (S.D. Tex. April 10, 2008)_; _Johnson v. Big Lots Stores, Inc., Nos. 04-3201, 05-6627, 2007 U.S. Dist. LEXIS 96151, 2007 WL 5200224, at \*3 (E.D. La. Aug. 21, 2007)_ ("Since _Mooney_ district courts in the Fifth Circuit have uniformly used [the _Lusardi_ approach] to determine whether a collective [action] should be certified under the FLSA.").

_HN2_[↑] Under the first step of the _Lusardi_ analysis, courts decide whether to issue notice to potential class members. _Aguirre, 2006 U.S. Dist. LEXIS 22211, at \*14_. As the court's decision is usually based only on the pleadings and affidavits, the standard is lenient and typically results in conditional certification. _Id. at \*14-15_. Indeed, as discovery usually has not been conducted at this stage, courts do not review the underlying merits of the action in determining whether to conditionally certify. _Colson v. Avnet, Inc., 687 F.Supp.2d 914, 2010 U.S. Dist. LEXIS 12620, at \*28 (D. Ariz. 2010)_. **[\*15]** "Some

courts place an emphasis on finding 'some identifiable facts or legal nexus [that] binds the claims so that hearing the cases together promotes judicial efficiency.'" _Aguirre, 2006 U.S. Dist. LEXIS 22211, at \*15_ (quoting _Barron v. Henry County Sch. Sys., 242 F.Supp.2d 1096, 1103 (M.D. Ala. 2003)_). Indeed, "'[a] court may deny plaintiffs' right to proceed collectively if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice.'" *Id.* (quoting _England v. New Century Fin. Corp., 370 F.Supp.2d 504, 507 (M.D. La. 2005)_). Specifically, "[t]he first-stage test requires a minimal showing by the plaintiff that (1) there is a reasonable basis for crediting the assertions that aggrieved individuals exist, (2) that those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted, and (3) that those individuals want to opt-in to the lawsuit." _Id. at \*19_; _Albanil v. Coast 2 Coast, Inc., No. H-08-486, 2008 U.S. Dist. LEXIS 93035, 2008 WL 4937565, at \*6 (S.D. Tex. Nov. 17, 2008)_ (quoting _Maynor v. Dow Chem. Co., No. G-07-504, 2008 U.S. Dist. LEXIS 42488, 2008 WL 2220394, at \*6 (S.D. Tex. May 28, 2008)_). "Some **[\*16]** factual support for the complaint allegations of class-wide policy or practice must be shown to authorize notice." _Maynor, 2008 U.S. Dist. LEXIS 42488, 2008 WL 2220394, at \*6_.

_HN3_[↑] Once a court conditionally certifies a class, the action proceeds as a collective action during discovery. _Aguirre, 2006 U.S. Dist. LEXIS 22211, at \*16_ (citing _Mooney, 54 F.3d at 1214_). At the second stage of the analysis, the defendant moves to "decertify" the conditionally-certified class. *Id.* (citing _Mooney, 54 F.3d at 1214_). The court then must make a factual determination as to whether the employees are similarly situated; if it so finds, the collective action may proceed. _Id. at \*16-17_. Alternatively, if the court finds that the employees are not similarly situated, the opt-in plaintiffs are dismissed without prejudice and the original plaintiffs proceed with their individual claims. _Id. at \*17_ (citing _Mooney, 54 F.3d at 1214_).

## III. ANALYSIS

Plaintiffs define the class similarly situated to Plaintiffs as follows:

> The Class Members are all of Defendant's current and former paralegal employees who worked more than forty (40) hours in a workweek but were not paid one and one-half times their regular rate of pay

at any time starting three **[\*17]** years before this Complaint was filed up to the present.

(Doc. No. 9, First Am. Comp. ¶ 36.) The Court finds that there is a reasonable basis for crediting Plaintiffs' assertions that aggrieved individuals exist. Furthermore, there is a reasonable basis to believe that the Plaintiffs are similarly situated to the proposed class if the class is narrowed to include only salaried paralegals. Plaintiffs have also met the third requirement of showing that the other aggrieved individuals would seek to join the lawsuit.

## A. Aggrieved Individuals

Plaintiffs assert that they worked with, knew of, and conversed with other salaried paralegals who worked more than forty hours per week and were also denied overtime pay. (Davis Decl. ¶ 5; Alvarado Decl. ¶ 6; Dryden Decl. ¶ 2.) Davis also contends that she spoke with office manager, Margaret McCoy, who informed her that no salaried employee received overtime pay. (Davis Decl. ¶ 5.) With these declarations, Plaintiffs have established that there is a reasonable basis to believe other aggrieved individuals exist. *Prater, 2007 U.S. Dist. LEXIS 85538, 2007 WL 4146714, at \*5*.

## B. Similarly Situated

*HN4*[↑] ] Plaintiffs "must provide the court with some evidence (a 'reasonable basis') showing that **[\*18]** the defendants subjected a group of similarly situated potential class members to a 'single decision, policy, or plan' violating the provisions of the FLSA." *Albanil, 2008 U.S. Dist. LEXIS 93035, 2008 WL 4937565, at \*3* (quoting *Roussell v. Brinker Intern., Inc., No. H-05-3733, 2008 U.S. Dist. LEXIS 52568, 2008 WL 2714079, at \*24 (S.D. Tex. July 9, 2008))*. "A finding of similarly situated employees does not require a showing of identical duties and working conditions across the entire group." *Morales v. Thang Hung Corp., No. 4:08-2795, 2009 U.S. Dist. LEXIS 71765, at \*9 (S.D. Tex. Aug. 14, 2009)* (citing *Falcon v. Starbucks Corp., 580 F.Supp.2d 528, 534 (S.D. Tex. 2008))*; *Albanil, 2008 U.S. Dist. LEXIS 93035, 2008 WL 4937565, at \*6* ("The court need not find uniformity in each and every aspect of employment to determine a class of employees are similarly situated." (quotations omitted)); *Holbrook, 246 F.R.D. at 106*. "However, it does require a minimal showing that all members of the class are similarly situated in terms of job requirements and payment practice." *Id.* Although this showing is not stringent, it requires "more than

unsupported and generalized allegations." *Rodgers v. CVS Pharmacy, Inc., No. 8:05-CV-770-T-27MSS, 2006 U.S. Dist. LEXIS 23272, at \*17 (M.D. Fla. March 22, 2006)*. **[\*19]** Furthermore, "employees with the same job title are not 'similarly situated' for the purposes of an 'opt-in' FLSA class if their day-to-day job duties vary substantially." *Aguirre, 2006 U.S. Dist. LEXIS 22211, at \*21*. Courts have found, however, that putative class members are similarly situated if they have only "superficially different job titles or slightly different job duties." *Detho, 2008 U.S. Dist. LEXIS 29502, at \*13*.

Plaintiffs claim that they performed duties that were typical of the members of their proposed class—specifically, "clerical duties that included typing, filing, and copying and other general work associated with the representation of the firm's clients." (Davis Decl. ¶ 2; Alvarado Decl. ¶ 2; Dryden Decl. ¶¶ 3, 5.) Mostyn argues, however, that its offices operated largely independently, with little overlap; dockets varied considerably, resulting in differing duties; paralegals were divided into three different tiers or positions with differing duties; paralegals were not responsible for copying, filing, answering phones, and similar tasks; and the manner of compensation and number of hours worked varied significantly between different types of paralegals. (Resp. **[\*20]** to Mot. Not. 3-9; Anderson Decl. ¶¶ 4-30.) In other words, Mostyn argues, "[b]ecause of the significant discrepancies in job duties, responsibilities, classification, and reporting structure among paralegals, the putative class is not similarly situated as a matter of law." (Resp. to Mot. Not. 2.) Mostyn also points to the deposition of Alvarado as evidence that Plaintiffs' list of job duties does not accurately encompass the paralegals' work. (Alvarado Dep. 121:7-122:25.) Mostyn explains that the individuals "Plaintiffs seek to represent work in three distinct jobs in different cities for different supervisors, and their job duties and reporting structure vary widely." (Resp. to Mot. Not. 14.) According to Mostyn, the variations in job duties include:

- Some paralegals supervised paralegals and support staff and others did not;
- Some paralegals interviewed prospective candidates and participated in hiring decisions and others did not;
- Some paralegals participated in disciplinary and termination matters and others did not;
- Some paralegals participated in setting compensation and others did not; and
- Some paralegals exercised discretion in assigning projects to subordinates and others **[\*21]** did not.

(*Id.*) Furthermore, as Mostyn points out, Davis, in her deposition, agreed with her interviewer's proposition that the law firm "was almost totally different" by the time she arrived, as compared to when Alvarado worked there. (Davis Dep. 87:5-8.)

The Court finds that there is a reasonable basis to believe Plaintiffs are similarly situated to the following potential class: Mostyn's current and former salaried paralegal employees who worked more than forty hours in a workweek but were not paid one and one-half times their regular rate of pay at any time starting August 3, 2008 to present. Plaintiffs have submitted declarations establishing that they and other paralegals performed clerical duties and other work associated with the representation of the firm's clients. Although there may have been some variation in paralegal duties, such variation does not indicate that the paralegals were not similarly situated. *Black v. Settlepou, P.C., No. 3:10-CV-1418-K, 2011 U.S. Dist. LEXIS 15493, 2011 WL 609884, at *4 (N.D. Tex. Feb. 14, 2011)* (allowing issuance of FLSA notice to paralegals who were allegedly wrongfully exempt even though they operated in different divisions, as it appeared that paralegals in different [*22] divisions performed the plaintiff's primary duties of "speaking to clients, composing documents, and organizing files"). Indeed, even if paralegals' duties "vary to some degree from day-to-day and possibly from location to location," or even from docket to docket, the "thrust of the job duties," as established by Plaintiffs' declarations, remains similar. *Foraker v. Highpoint Southwest, Services, L.P., No. H-06-1856, 2006 U.S. Dist. LEXIS 63951, 2006 WL 2585047, at *4 (S.D. Tex. Sept. 7, 2006)*. *See also Yoakum v. PBK Architects, Inc., No. H-10-00278, 2011 U.S. Dist. LEXIS 114190, 2011 WL 4688714, at *4 (S.D. Tex. Oct. 4, 2011)* ("The court sees no meaningful distinction for purposes of the 'similarly situated' step of the *Lusardi* test arising from the fact that not every CSR had the same experience, that some CSRs may have exercised more authority than others, or that field representatives from the MEP division address different aspects of the construction projects than CSRs. The similarities in the duties far outweigh these relatively minor differences."). Moreover, the fact that some paralegals may have had different titles does not contravene the fact that the paralegals are in essence similarly situated. *See, e.g., Berger v. The Cleveland Clinic Foundation, No. 1:05-CV-1508, 2007 U.S. Dist. LEXIS 76593, 2007 WL 2902907, at *21 (N.D. Ohio Sept. 29, 2007)* [*23] (finding that the fact that many declarants are respiratory therapists, while plaintiff was a respiratory technician, did not, by itself, preclude a finding that class members were similarly

situated); *Prater v. Commerce Equities Management Co., Inc., No. H-07-2349, 2007 U.S. Dist. LEXIS 85338, 2007 WL 4146714, at *6 (S. Tex. Nov. 19, 2007)* (finding that plaintiffs had made the necessary minimal showing that leasing staff employees were similarly situated in terms of job requirements, even though their titles differed and even though defendants submitted a conflicting affidavit asserting that they had different positions and different duties, as plaintiffs had submitted affidavits asserting that they "all did the same thing which included performing leasing, administrative, and marketing tasks").

The Court also finds that there is a reasonable basis to believe that Plaintiffs are similarly situated to salaried paralegals who worked in other locations. Dryden claims that she spoke on occasion with paralegals in Mostyn's other offices, and, based on phone conversations with them, gathered that these paralegals were engaged [*24] in similar types of activities. (Dryden Decl. ¶ 5.) Alvarado further explains that he had periodic telephone conversations and in-person meetings with paralegals from other offices, and deduced from these interactions that they performed the same activities he did. (Alvarado Dep. 64:6-65:20.) Thus there is a reasonable basis to believe that Plaintiffs, although situated only in Houston, were similarly situated to salaried paralegals in other Mostyn offices. *Compare Dorsey v. J & V Comm'n Services, Inc., No. H-04-0496, 2004 U.S. Dist. LEXIS 31485, 2004 WL 5621864, at *3 (S.D. Tex. May 18, 2004)* (denying conditional certification in part because current plaintiffs were only employed at the Houston facility, and did not indicate that they had knowledge about workers in facilities in other cities); *Gonzales v. Hair Club for Men, Ltd., Inc., No. 6:06-cv-1762-Orl-28JGG, 2007 U.S. Dist. LEXIS 26160, at *10 (M.D. Fla. April 9, 2007)* (denying issuance of FLSA notice in part because plaintiffs had not claimed knowledge of alleged FLSA violations at locations other than a single office, and did not allege that the violations at that office stemmed from a company-wide policy or practice).

Although Plaintiffs have not worked [*25] at Mostyn since mid-2010, the Court finds that they have nonetheless established a reasonable basis to suggest that they are similarly situated to Mostyn's current and former salaried paralegal employees who worked more than forty hours in a workweek but were not paid one and one-half times their regular rate of pay. At the second stage of the *Lusardi* analysis, after discovery, the Court may find that the Plaintiffs are in fact not similarly situated to this class; Plaintiffs' showing is sufficient, however, to show a reasonable basis at this,

2012 U.S. Dist. LEXIS 6014, *25

the first stage of the *Lusardi* approach.

Mostyn also insists that there are at least five different exemptions that may apply to any given paralegal, and that the hours worked by any given paralegal differ greatly week to week and paralegal to paralegal. (Resp. to Mot. Not. 2.) Therefore, Mostyn contends, "allowing this matter to proceed as a collective action would require that the Parties present evidence and a jury resolve a multitude of individualized inquiries regarding who was exempt during what time periods under at least five different exemptions, how many hours were worked by each class member in every week during a three year period, **[\*26]** and what each class member's damages should be." (*Id.*) The Court does not find Mostyn's argument to be compelling, given that the U.S. DOL has issued at least two opinion letters suggesting that at least some of the exemptions Mostyn clings to do not, in fact, apply to paralegals. (Ex. D & E to Reply to Response to Mot. Not., "Dec. 16, 2005 Letter from U.S. Department of Labor Employment Standards Administration Wage and Hour Division," and "July 24, 2006 Letter from U.S. Department of Labor Employment Standards Administration Wage and Hour Division.") Furthermore, although there may be slight variations among the duties of Mostyn paralegals, the Plaintiffs' declarations indicate that most perform substantially the same activities; therefore, the Court is doubtful that many exemptions will in fact apply. The Court further believes that the fact that individualized determinations for damages may have to be made should not preclude the issuance of notice at the first *Lusardi* stage. *Maynor, 2008 U.S. Dist. LEXIS 42488, 2008 WL 2220394, at \*8.*

The Court also finds that Plaintiffs have sufficiently alleged that they were subject to the same company-wide policy as other salaried paralegals. *HN5*[⬆️] "Many courts have stated that **[\*27]** putative class members must show that they were affected by a common policy, plan, pattern, or practice to satisfy the 'similarly situated' inquiry." *Gibson v. NCRC, Inc., No. H-10-1409, 2011 U.S. Dist. LEXIS 77591, 2011 WL 2837506, at \*4 (S.D. Tex. July 18, 2011).* However, other courts have stated that "[a] common policy is not necessarily required and uniformity is clearly not necessary." *Perez v. Guardian Equity Management, LLC, No. H-10-0196, 2011 U.S. Dist. LEXIS 73219, 2011 WL 2672431, at \*6 (S.D. Tex. July 7, 2011).* Rather, "'[t]he similarly situated' requirement of *§ 216(b)* is more elastic and less stringent than the requirements found in *Rule 20* (joinder) and *Rule 42* (severance)[, so] a unified policy, plan, or scheme of discrimination may not be required to satisfy ... *§ 216(b)*.'" *Id.* (quoting *Grayson v. K Mart*

*Corp., 79 F.3d 1086, 1095 (11th Cir. 1996)). See also Black, 2011 U.S. Dist. LEXIS 15493, 2011 WL 609884, at \*4* ("The less stringent requirements of an FLSA collective action may not require a unified policy, plan, or scheme."). Plaintiffs state that they have knowledge of other paralegals who performed similar work, were paid on a salary basis, and did not receive overtime. In addition, Davis alleges that she spoke with her office manager, who informed **[\*28]** her that no salaried employee received overtime pay. (Davis Decl. ¶ 5.) At this stage, Plaintiffs' declarations and allegations are sufficient to meet their lenient obligation. *Black, 2011 U.S. Dist. LEXIS 15493, 2011 WL 609884, at \*4* (finding plaintiff's evidence that she had personal knowledge that her duties and compensation were comparable to other paralegals, and that there was no explanation as to why some paralegals were classified as "exempt" and others were not, was sufficient to suggest a policy may have been in place). [1]

Mostyn compels the Court to consider this case in light

_____

[1] Mostyn also contends that Plaintiffs' allegations of a policy or plan are insufficient because they have merely asserted that they were misclassified as exempt under the FLSA. (Resp. to Mot. Not. 19.) Mostyn avers that an employer's classification of employees is not a decision, policy, or plan that supports collective action treatment. The Court disagrees, noting that *HN6*[⬆️] many courts have issued class notice at the first *Lusardi* stage even when the alleged policy is a classification of exempt. *Black, 2011 U.S. Dist. LEXIS 15493, 2011 WL 609884, at \*3; Betancourt v. Maxim Healthcare Services, Inc., No. 10-C-4763, 2011 U.S. Dist. LEXIS 43228, 2011 WL 1548964 (N.D. Ill. April 21, 2011); Wlotkowski v. Michigan Bell Telephone Co., 267 F.R.D. 213, 217 (E.D. Mich. 2010);* **[\*29]** *Albanil, 2008 U.S. Dist. LEXIS 93035, 2008 WL 4937565, at \*6; Herring v. Hewitt Associates, Inc., No. 06-267 (GEB), 2007 U.S. Dist. LEXIS 53278, 2007 WL 2121693 (D.N.J. July 24, 2007); Trinh v. JP Morgan Chase & Co., 2008 U.S. Dist. LEXIS 33016, \*11 n.2 (S.D. Cal. Apr. 22, 2008),* as support for their position. The *Trinh* court does state in a footnote that "[s]everal courts have found that merely alleging that a class of employees was wrongly designated 'exempt' does not constitute a showing of an unlawful, institution-wide policy." *Id.* Yet *Trinh* relies on a case in which plaintiffs requested issuance of notice without making any "showing that the job responsibilities of the named plaintiffs are the same or similar to those of the remaining members of the proposed class"; indeed, in *Morisky v. Public Serv. Elec. & Gas Co., 111 F. Supp. 2d 493, 498 (D.N.J 2000),* the plaintiffs did not "even discuss the job responsibilities of the opt-in plaintiffs." *Id.* Furthermore, the *Morinsky* court was applying the stricter standard of the second stage of the *Lusardi* analysis.

of *Wal-Mart Stores, Inc. v. Dukes, ___ U.S. ___, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011)*, stating that the Supreme Court articulated a heightened standard for certification of class actions. (Resp. to **[\*30]** Mot. Not. 11.) Although *Dukes* was decided in a *Rule 23* class action context, Mostyn insists that its underlying principles apply to conditional certification under the FLSA. (*Id.*) *See also Ruiz v. Serco, Inc., No. 10-cv-394-bbc, 2011 U.S. Dist. LEXIS 91215 (W.D. Wis. Aug. 5, 2011).* "In *Dukes*, the [Supreme] Court noted that '[w]hat matters to class certification ... is not the raising of common questions—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.'" *Id. at \*19* (citing *Dukes*, 131 S.Ct. at 2551). Extrapolating from *Dukes*, a district court in the Western District of Wisconsin concluded, in the context of a motion for preliminary FLSA class certification, that "it would be difficult to generate common answers in light of the individualized inquiries arising from the wide variations in duties, experience, responsibility, discretion, and supervisors on the part of the potential class members." *Id.* In that case, the "primary duties" of the proposed class members varied significantly; **[\*31]** in the present case, however, there is a reasonable basis to conclude that the primary duties are in fact similar. *Dukes* does not advance Mostyn's case, as Plaintiffs and salaried paralegals who have worked at Mostyn during the three-year period do not suffer from "dissimilarities" that may "impede the generation of common answers." *Dukes*, 131 S.Ct. at 2551.

## C. Desire to Opt-In

*HN7* ] Plaintiffs must also offer evidence that others seek to join the lawsuit. *Parker v. Rowland Express, Inc., 492 F.Supp.2d 1159, 1164-65 (D. Minn. 2007)* ("Simply put, a plaintiff must do more than show the mere *existence* of other similarly situated persons, because there is no guarantee that those persons will actually seek to join the lawsuit."); *Rodgers, 2006 U.S. Dist. LEXIS 23272, at \*8* ("A plaintiff's or counsel's belief in the existence of other employees who desire to opt in and unsupported expectations that additional plaintiffs will subsequently come forward are insufficient to justify certification of a collective action and notice to a potential class.... Rather, a showing that others desire to opt in is required before certification and notice will be authorized by the court." (internal quotations and **[\*32]** citations omitted)). Reliance on the plaintiff's "own

allegations that the putative class members exist and together were the victims of a single decision, policy, or plan is insufficient to meet [the] burden" of showing "that the additional aggrieved persons exist and want to join the lawsuit." *Simmons v. T-Mobile USA, Inc., No. H-06-1820, 2007 U.S. Dist. LEXIS 5002, 2007 WL 210008, at \*9 (S.D. Tex. Jan. 24, 2007)*. *See also Clark v. City of Fort Worth, No. 4:10-CV-519-Clark, 800 F. Supp. 2d 776, 2011 U.S. Dist. LEXIS 3082, at \*10 (S.D. Tex. Jan. 11, 2011)* (denying issuance of FLSA notice in part because plaintiffs had done little more than allege the existence of potentially similarly situated employees); *Morales, 2009 U.S. Dist. LEXIS 71765, at \*9-10* (concluding that class notice would not issue, in part because plaintiff failed to show that similarly situated persons would actually seek to join the lawsuit); *Detho, 2008 U.S. Dist. LEXIS 29502, at \*17-18*.

However, *HN8* ] the participation of additional plaintiffs in a lawsuit after the initial plaintiff is relevant in determining whether there is a reasonable basis to assume that similarly situated individuals would seek to join the lawsuit. *Prater, 2007 U.S. Dist. LEXIS 85338, 2007 WL 4146714, at \*8*. The Court finds **[\*33]** that Plaintiffs have shown a reasonable basis that others will join the lawsuit because additional Plaintiffs have joined the lawsuit since its inception, in conjunction with the fact that Plaintiffs have named other paralegals who worked overtime without being paid at an overtime rate. *Id.*; *Black, 2011 U.S. Dist. LEXIS 15493, 2011 WL 609884, at \*3*; *Albanil, 2008 U.S. Dist. LEXIS 93035, 2008 WL 4937565, at \*6*.

## D. Scope of the Class

Finally, Mostyn raises concerns about the scope of the class. Mostyn points out that, in their First Amended Complaint, Plaintiffs state that "the class of similarly situated Plaintiffs is properly defined as follows: ... all of Defendant's current and former paralegal employees who worked more than forty (40) hours in a workweek but were not paid one and one-half times their regular rate of pay at any time starting three years before this Complaint was filed up to the present." (Resp. to Mot. Not. 21-22; First Am. Compl. ¶ 36.) Now, however, Plaintiffs request that notice be sent to "all paralegals/legal assistants who worked for Defendant at any time during the period from August 3, 2008 through the present." (*Id.*) Mostyn argues that this expands the scope of the putative class to include legal assistants, and **[\*34]** to include paralegals who were classified as non-exempt and paid for all overtime worked. (*Id.*)

2012 U.S. Dist. LEXIS 6014, *34

Mostyn also argues that the class should be limited to salaried Supervisor Paralegals in Plaintiffs' Houston office.

For the reasons explained above, the Court believes that Plaintiffs have advanced sufficient evidence to support conditional certification on a firm-wide basis, and as to all salaried paralegals. However, the Court agrees that notice should not issue as to "legal assistants," as Plaintiffs nowhere provide a basis for assuming that they are similarly situated to legal assistants, or indeed even describe the job duties of legal assistants. The Court also believes that the proposed class should be limited to salaried paralegals only. Plaintiffs have not advanced sufficient evidence to show that there is a reasonable basis for believing that they are similarly situated to non-salaried paralegals. Indeed, Plaintiffs' evidence primarily involves salaried paralegals, and the alleged common policy or practice binding the class together concerns the treatment of salaried employees. (*See, e.g.*, Davis Decl. ¶ 5 (noting that "[t]here were dozens of salaried paralegals who worked more than **[*35]** 40 hours per week for Defendant during my employment period there who were also denied overtime pay," and averring that the office manager informed her "that no salaried employee received overtime pay").)

## IV. CONCLUSION

For the reasons explained above, Plaintiffs' Motion (Doc. No. 10) is **GRANTED.** The following class is conditionally certified: All of Defendant's current and former salaried paralegal employees who worked more than forty (40) hours in a workweek but were not paid one and one-half times their regular rate of pay at any time starting August 3, 2008 to present. [2]

---

[2] The Court finds it appropriate to extend notice to paralegals within the three-year period rather than the two-year period Mostyn requests. *HN9*[⬆] "The well-established precedent of the Southern District of Texas indicates that, where a plaintiff alleges a willful FLSA violation, notice is proper for potential class members employed by the defendant within the full three-year period; FLSA plaintiffs are not required to prove willfulness without the benefit of discovery." *Albanil, 2008 U.S. Dist. LEXIS 93035, 2008 WL 4937565, at *8* (citing *Lopez v. Sam Kane Beef Processors, Inc., No. CC-07-335, 2008 U.S. Dist. LEXIS 15572, 2008 WL 565115, at *2 (S.D. Tex. Feb. 29, 2008)*; *Foraker, 2006 U.S. Dist. LEXIS 63951, 2006 WL 2585047, at *5*; **[*36]** *Villatoro v. Kim Son Restaurant, L.P., 286 F.Supp.2d 807, 811 (S.D. Tex. 2003))*. As the Court would

The Court orders that Mostyn shall provide to Plaintiffs' counsel the names, positions, dates of employment, all addresses (work and home), and all email addresses (personal and work) for all class members as defined above. [3] Mostyn shall provide such information in a computer readable format within seven days of the date of this Order. A corporate representative of Mostyn shall issue a declaration or affidavit, under penalty of perjury, stating that Mostyn has produced a complete and accurate list of current and former paralegal employees who worked for Mostyn at any point from August 3, 2008 to present; that no employees have been excluded from the list; that the list includes all of the data ordered to be produced by the Court; and that Mostyn has performed a thorough investigation, including the number of hours spent in preparing the list.

Mostyn argues that the proposed notice and consent forms suffer from several deficiencies. (Resp. to Mot. Not. 24.) The Court orders the parties to meet and confer regarding the content of the notice and consent form and to submit a joint proposed form within ten (10) days of the Court's ruling. At that time, the parties may submit any additional briefing addressing the content of the notice and consent form. Notice shall issue once the Court has received the joint proposed notice form and resolved any disputes about the content of the notice. Notice shall issue to all salaried paralegal employees who worked for Mostyn at any time during the period from August 3, 2008 to present.

Mostyn, its management, and its supervisory personnel are hereby prohibited from **[*38]** communicating, directly or indirectly, with any current or former paralegal employees about any matters which touch or concern the settlement of any outstanding wage claims or other matters related to this suit during the opt-in period. This Order shall not restrict Mostyn from discussing with any

---

"not require plaintiffs to prove willfulness without the benefit of discovery," the Court will authorize notice for the three-year period. *Lopez, 2008 U.S. Dist. LEXIS 15572, 2008 WL 565115, at *2*.

[3] The Court declines to require Mostyn to provide further information at this **[*37]** time, as it shares Mostyn's concerns that disclosing dates of birth, social security numbers, and telephone numbers may be invasive. *Vogt v. Texas Instruments, Inc., No. 3:05-CV-2244-L, 2006 U.S. Dist. LEXIS 67226, 2006 WL 4660134, at *4 (N.D. Tex. Sept. 19, 2006)* ("The Court agrees with Defendant's concerns regarding the privacy of its employees. At this stage, Plaintiffs have not demonstrated a need for locating information beyond names and addresses.").

2012 U.S. Dist. LEXIS 6014, *37

current employee matters that arise in the normal course of business.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 19th day of January, 2012.

/s/ Keith P. Ellison

**KEITH P. ELLISON**

**UNITED STATES DISTRICT COURT JUDGE**

---

End of Document

Clayton Craighead